PALMER SOUTH

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 21, 1881.*

1. CRIMINAL LAW—*burden of proof—doubt as to guilt.* An instruction on the trial of one for murder, that "it is a rule of law that the burden of proving the defendant guilty is upon the prosecution, and if the jury are unsatisfied from the nature and character of the evidence, or from a want of evidence, as to whether the deceased came to his death at the hands of the defendant, or from other cause, or from other hands, they will find the defendant not guilty," announces a correct principle of law, and if applicable to the facts in evidence, upon which a doubt might reasonably arise in the minds of the jury, as to the truth of the testimony implicating the accused, or whether he was not at another place when the homicide, if any, took place, it is error to refuse it.

2. SAME—*confession uncorroborated.* Where the evidence, on a trial of one charged with murder, fails to establish the *corpus delicti*, the jury can not convict the accused upon his mere confession, made out of court, uncorroborated by any facts and circumstances showing the truth of such confession, but it is otherwise when the *corpus delicti* is proved by other evidence in the case.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. C. A. WALKER, for the plaintiff in error.

Mr. JAMES McCARTNEY, Attorney General, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

At the June term, 1880, of the Macoupin circuit court, Palmer South, plaintiff in error, was indicted for the murder of one James C. Hart, in said county, on the 20th day of April, 1867. At the following September term of the court the defendant pleaded not guilty. A trial was had, which resulted in a verdict of guilty, and the jury fixed the imprisonment of the defendant in the penitentiary at fourteen years,

The defendant sued out a writ of error, and assigns for a reversal of the judgment, two errors: First, that the court erred in refusing two of his instructions; second, that the evidence is not sufficient to sustain the verdict.

The defendant, on the 20th day of April, 1867, at the time of Hart's death, was seventeen years old. He was then residing with Hart, who had, ten or eleven months before, married his mother, a widow with seven sons, including the defendant. Two of the defendant's brothers, John and James, were also residing with Mr. Hart, but it is not intimated that they were in any manner connected with Hart's death. James was then six and John thirteen years old. On the 20th day of April, 1867, about noon, these small boys, on being sent to the stable by their mother to call Hart to dinner, found him dead, hanging by the neck in the stable, which was but a short distance from the house in which he resided. The two small boys had been working in the field during the forenoon, while the deceased and the defendant had been about the house and stable, until the defendant, some time during the forenoon, left on horseback for Mr. Wheeler's place, about seven miles distant, where he arrived, as Mr. Wheeler testified, between 9 and 11 o'clock. No other person was shown to be about the place that forenoon, except Mrs. Hart, who was attending to her household duties in the house. On the trial, the theory of the defence was, that the deceased took his own life, by hanging, and in support of this view it was proven that Hart, for two months before his death, was in poor health, and at times he did not appear to be in his right mind; that on several occasions he had attempted to take his own life. While the deceased was found hanging by the neck under circumstances which might lead to the belief that he had taken his own life, yet there was evidence tending to prove that the deceased had, in fact, been murdered by some person. Upon an examination of the body a wound was found on the forehead, about the size of a half dollar, which had the appearance of having been made with a blunt

instrument, like the head of a hatchet. There was also a bruise on the nose,—the bridge of the nose seemed to be broken. A bruise was also found on the under side of the wrist. One witness who made an examination of the body, although not a physician, thinks the skull was fractured and the nose broken. After the deceased had been hung, quite a quantity of blood came from the wound on the forehead or nose and dropped on the stable floor. Blood was found in a corn-crib adjoining the stable, on harness hanging in the stable, and on the stable wall, which had the appearance of having been made by the fingers of a man's hand. Drops of blood were also found on the stable floor leading from the crib door to the place where deceased was hanging. These are facts from which the jury might find that Hart did not take his own life, but, on the other hand, that his death was caused by violence inflicted by some third party, and that the hanging was a subterfuge, resorted to for the purpose of covering up or concealing the crime. But if the evidence was sufficient to establish the fact that Hart was murdered, the important question then arose, whether the defendant was proven to be guilty of the crime.

The defendant was convicted solely upon his own admissions, as there was no fact or circumstance proven tending to establish his guilt, outside of his own declarations. It has been held, in some of the States, that the confession of a party not made in open court, or on examination before a magistrate, but to an individual, uncorroborated by circumstances, will not justify a conviction, especially in capital cases. American Criminal Law, vol. 1, sec. 683, and note. And there is much reason and sound sense in the rule. But the current of authority is, that a conviction may be had on the admissions of a defendant, where the *corpus delicti* has been proven; but the prisoner's confession, when the *corpus delicti* has not been otherwise proven, has been held insufficient for his conviction. Greenleaf on Ev., vol. 1, sec. 217. In this case, *corpus delicti* was proven by evidence entirely independ-

ent of defendant's admissions, and, under the rule announced, if the jury were satisfied, beyond a reasonable doubt, that the defendant made the admissions testified to by Mrs. Shattuck, and the admissions so made were true, then the verdict of guilty might follow. And, inasmuch as the defendant's guilt was a question of fact, purely for the determination of the jury, we might not feel called upon to reverse on the ground alone that the verdict was not, in our opinion, fully justified by the evidence.

The two following instructions were asked by the defendant and refused by the court, and the defendant excepted to the decision of the court:

"The court further instructs the jury, that it is a rule of law that the burden of proving the defendant guilty is upon the prosecution, and if the jury are unsatisfied, from the nature and character of the evidence, or from a want of evidence, as to whether the deceased came to his death at the hands of the defendant or from other cause, or from other hands, they will find the defendant not guilty."

"The court further instructs the jury, that they can not convict the defendant upon his mere confession, made out of court, uncorroborated by any facts or circumstances showing the truth of such confessions."

The first instruction, as we understand it, announces a correct proposition of law, and as it was applicable to the facts proven before the jury, we perceive no ground upon which it could properly be refused by the court.

As we have before said, there was no evidence introduced on behalf of the people which would establish the guilt of the defendant except the declarations drawn out of him when he was reeling drunk, and engaged in a drunken quarrel with his mother-in-law, Mrs. Shattuck. In this conversation he charged her with killing her first husband, and she in turn retorted, charging him with killing Hart. When or where these declarations

were made does not appear from the evidence in the record, nor does the motive which induced her to make public the declarations appear. Under such circumstances, might not the jury have been, as declared by the instruction, unsatisfied from the nature and character of the evidence, or from a want of evidence, whether the deceased came to his death at the hands of the defendant or in some other manner? If so, the instruction was appropriate, and it should have been given by the court, and it was error to refuse it. It is true, the law does not exonerate a person from what he may say while intoxicated, unless it appears that he is not conscious of what he says, but here the declarations were elicited from the defendant when he was "reeling drunk," and engaged in a heated quarrel with Mrs. Shattuck, he charging her with a high crime and she bringing the same charge against him. Now, while this witness Shattuck might possibly possess sufficient moral virtue and such a high regard for truth as afterwards to go upon the stand and truthfully narrate what her enemy, who accused *her* of murder, had said while they were in a heated quarrel, yet the rights of the defendant and the principles of justice demanded that the jury should be so instructed that they might, if they saw proper and the facts before them justified it, reject her evidence as unworthy of credit.

If the evidence of Mrs. Hart, the wife of the deceased, be true, and she was not impeached, the defendant could not be guilty of the crime, notwithstanding the evidence of Mrs. Shattuck. Mrs. Hart testified that the defendant left the place for Mr. Wheeler's about eight o'clock in the morning; she saw him at the gate when he was in the act of starting, gave him a "sack" containing some articles to carry to Mrs. Wheeler, her sister. She saw Hart at the gate with the defendant; saw him tie up the halter of his horse. Then she went into the house and Hart followed. He then went to the field where the small boys were at work, remained until ten or half-past ten o'clock, when he returned and remained

about the house until about eleven o'clock, when he went to the stable with water for a horse, came back and spoke to a man named Smith, who passed the road, and then went to the stable again. If it be true, as she says, that Hart was there about eleven o'clock, the defendant could not be guilty, as he was then seven or eight miles distant, at Mr. Wheeler's place. But, however this may be, the rights of the defendant and the ends of justice required that the instructions to govern the jury should be accurate.

In regard to the other refused instruction, had the evidence failed to establish the *corpus delicti*, then it would have been proper, as held in *Bergen* v. *The People*, 17 Ill. 426, but as the *corpus delicti* was proven, the instruction did not announce the law which should. govern the jury under the evidence. For the error indicated the judgment will be reversed, and the cause remanded.

*Judgment reversed.*