# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

OCTOBER TERM, 1905.

*(Continued from Volume 190.)*

## THE STATE v. KOSKY, Appellant.

Division Two, November 21, 1905.

1. **APPEAL: Criminal Case: Affidavit.** On the authority of State v. Smith, 190 Mo. 706, it is held that an affidavit is not necessary for an appeal in a criminal case.

2. **STOLEN PROPERTY: Description: Cigars: Information.** While property charged to have been stolen should be described with as much certainty as the circumstances will permit, yet a minute description is not necessary. And it is held in this case that the description, in the information, of the stolen goods as "twelve hundred cigars of the value of forty-two dollars," was sufficient to apprise the defendant of what property he was charged with receiving.

3. **RECEIVING STOLEN GOODS: Information.** The information in this case, the first count of which charged defendant with receiving stolen goods, knowing them to have been stolen, is held sufficient, and not vulnerable to the objection that it did not inform defendant of the nature and cause of the accusation.

4. **———: Evidence: Sufficiency.** The evidence in this case is examined and *held* sufficient to justify a conviction of receiving stolen goods, knowing them to have been stolen.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*S. S. Bass* for appellant.

(1) The motion to quash the information, or each count therein, should have been sustained, because: (a) The first count of the information (buying and receiving stolen property, knowing it to be stolen) fails to describe the property with sufficient certainty. Clark's Crim. Proc., sec. 92. (b) Said first count charges two separate and distinct crimes in the one count. R. S. 1899, sec. 1916; State v. Thierauf, 167 Mo. 429. (2) The instruction prayed for by the defendant at the close of the State's case in the nature of a demurrer should have been given. The evidence did not disclose facts sufficient to warrant submission of the case to the jury upon either the count for buying and receiving property, knowing it to be stolen, or the count for larceny. The evidence does not support the allegations of either count of the information. The crime, if any has been established by the evidence, is an offense under, and a clear violation of section 1930, Revised Statutes 1899, the obtaining of property by personating another.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The information, which was properly verified, was sufficient, and was even more complete than one that has received the approval of this court. State v. Fink, 186 Mo. 50; R. S. 1899, sec. 1916. (2) As to the sufficiency of the evidence, it may be said that the jury believed the Fleming boy, as they had a right to do, and his testimony showed conclusively that defendant was guilty. State v. DeWitt, 152 Mo. 569; State v. Peebles, 178 Mo. 486; State v. Flora, 109 Mo. 297; State

v. Anderson, 84 S. W. 949; State v. Vickery, 19 Tex. 326; 1 Bishop on Crim. Law, sec. 207.

BURGESS, P. J.—At the April term, 1904, of the circuit court, city of St. Louis, under an information filed by the circuit attorney, which information was in two counts, the first count charging defendant with receiving stolen property, knowing it to have been stolen, and the second charging him with grand larceny, the defendant was found guilty on the first count of the information, and his punishment assessed at imprisonment in the penitentiary for a period of two years. His motions for a new trial and in arrest of judgment having been overruled, defendant appeals.

The State's evidence tended to show that the defendant was the proprietor of a pool-hall at No. 1418, Cass avenue in the city of St. Louis, and that in connection with that business he also sold cigars; that a boy named Willie Fleming had been in the habit of visiting the place for about a year, and that defendant suggested to him that he could easily make some money; that defendant entered into an arrangement with the boy whereby, he, the defendant, was to telephone to Peter Hauptmann Tobacco Company for some cigars and say that they were wanted by the Wolff-Wilson Drug Company and Fleming was to call for the cigars and bring them to the defendant's place of business. In consonance with this arrangement, the defendant went to the Republic building and telephoned for the cigars, representing to the Peter Hauptmann Tobacco Company that they were for the Wolff-Wilson Drug Company, and that a boy would soon call for some of them. Defendant then told Fleming to go and get the cigars, and that if he should be required to sign any order or receipt for the cigars he should be careful to sign some such name as Myers, King or Hagan. The boy went for the cigars about 2 p. m., on the 25th day of February, 1904, and got six hundred Cremos and six hundred Fontellas,

signed a paper, using the name Walter King, and took the cigars to defendant's pool-room. Defendant then paid the boy $8.50. The police afterwards arrested the boy for some other offense, and he told them of this transaction, whereupon the police went to defendant's residence, which was about two blocks from his pool-room, arrested him and found some of the cigars in a wardrobe in the front room of his dwelling. On being asked about the cigars he had bought from the boy, defendant admitted that he had them, and told the officers that some of them were in the wardrobe in the front room and some in the showcase at his pool-room. He stated that he had purchased the cigars from the boy and denied having obtained them in the way related by Fleming.

The manager for Wolff-Wilson Drug Company testified that no order for cigars was given that day. Two of the shipping clerks employed by the Peter Hauptmann Tobacco Company testified that the Fleming boy called at the said company's place of business and obtained twelve hundred cigars; that the boy claimed to represent the Wolff-Wilson Drug Company, and signed the name of Walter King, and that the cigars were worth $32 per thousand.

On behalf of defendant, the evidence tended to show that he enjoyed a good reputation for honesty; that he purchased these cigars from the Fleming boy in two lots, and paid him $12 the first time and $5 the second time, and had no knowledge whatever that any of them were stolen; that the boy represented to him that he was selling cigars for a firm which was trying to sell out, and, therefore, sold them at a reduction. The evidence further tended to show that this Fleming boy had obtained cigars from other houses in St. Louis, under similar cimcumstances, and sold them to proprietors of saloons and pool-rooms, and that at the time of the trial the boy was under indictment for larceny and obtaining goods by false pretenses.

The court instructed the jury as follows:

"1. If you believe and find from the evidence beyond a reasonable doubt that at the city of St. Louis and State of Missouri, on or about the 25th day of February, 1904, or at some time prior thereto, the property mentioned in the information herein, that is to say, twelve hundred cigars, were unlawfully and fraudulently stolen, taken and carried away from the possession of the Peter Hauptmann Tobacco Company, and that the said Peter Hauptmann Tobacco Company was then a corporation, by some person other than the defendant, Frank Kosky, with the intent on the part of the person so taking, stealing and carrying away the same unlawfully and fraudulently to convert said cigars to his own use and to deprive the said Peter Hauptmann Tobacco Company of the same permanently without its consent, and that the cigars and property so stolen, taken and carried away were of the value of $30.00 or more and were the property of the said Peter Hauptmann Tobacco Company; and you further find that after the said cigars and property had been so stolen, taken and carried away as aforesaid by some person other than the defendant, the said defendant, at the city of St. Louis and State of Missouri, on or about the 25th day of February, 1904, unlawfully, fraudulently and wrongfully did receive said property into his, the defendant's possession, knowing at the time he so received such cigars and property that it was stolen; and that he received the same with the unlawful and fraudulent intent to or for the purpose of aiding the thief or with the unlawful and fraudulent intent of permanently depriving the owner of its said property without its consent; and you further find from the evidence that the property so received by the defendant was of the value of thirty dollars or more, you will find the defendant guilty as charged in the first count of the information and assess his punishment at imprisonment in the penitentiary for a term of not fewer than two years, and not

more than five years, and unless you so find the facts you will acquit the defendant of the said charge of receiving stolen property.

"2. By the term 'knowing' that the property was stolen is not meant absolute, personal and certain knowledge on the part of the defendant that the cigars mentioned in the information had been stolen, but such knowledge and information in his possession at the time he so received the same as would put a man of ordinary prudence or exercising ordinary care on his guard, and would cause such a man to believe and to be satisfied that the property had been stolen.

"3. You are further instructed that if you find from the evidence that the twelve hundred cigars mentioned in the information were on the 25th day of February, 1904, owned by and in the possession of the Peter Hauptmann Tobacco Company and that the said Peter Hauptmann Tobacco Company was then a corporation, and that on said day at the city of St. Louis and State of Missouri, the defendant, Frank Kosky, acting in conjunction with the witness, William Fleming, unlawfully and fraudulently did obtain possession of said cigars from the said Peter Hauptmann Tobacco Company by unlawfully, falsely, designedly and fraudulently representing to the said Peter Hauptmann Tobacco Company that the said cigars were then ordered by the Wolff-Wilson Drug Company, and that the said William Fleming was then and there authorized by the said Wolff-Wilson Drug Company to represent it and receive said cigars for it; when in fact said cigars were not then ordered by said Wolff-Wilson Drug Company and the said William Fleming was not then authorized to represent the said Wolff-Wilson Drug Company and receive said cigars for it; and that the defendant then and there and thereby unlawfully and fraudulently did obtain possession of the cigars in question of and from the said Peter Hauptmann Tobacco Company and that the same were then and there unlawfully and fraudu-

lently taken and carried away by the defendant, so acting, from the possession of the said Peter Hauptmann Tobacco Company in the manner aforesaid, with the intent on the part of the defendant when so taking and carrying away said cigars unlawfully and fraudulently to convert the same to his own use and to deprive the owner of the said cigars permanently without its consent, and you find that said cigars so taken, stolen and carried away were of the value of thirty dollars or more, then you should find the defendant guilty of grand larceny as charged in the second count of the information, and assess his punishment at imprisonment in the penitentiary for a term of not less than two years, nor more than five years, and unless you so find the facts you should acquit the defendant of the charge of grand larceny in the second count of the information.

"4. You are instructed that under the information, the evidence and these instructions, you may convict the defendant of grand larceny as charged in the second count of the information and acquit him of the charge of receiving stolen property, contained in the first count of the information, or you may acquit him of grand larceny, as charged in the second count, and convict him of receiving stolen property, as charged in the first count, or you may acquit him of both charges, according as you may find the facts to be.

"5. You are further instructed that the information contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt. The law presumes the defendant to be innocent, and this presumption continues until it has been overcome by evidence which establishes his guilt to your satisfaction and beyond a reasonable doubt; and the burden of proving his guilt rests with the State. If, however, this presumption has been overcome by the evidence and the guilt of the defendant established to a moral certainty and beyond a reasonable doubt, your duty is to convict. If, upon consideration of all the evidence, you

have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt, touching the defendant's guilt, and not a mere possibility of his innocence.

"You are further instructed that the previous good character of the defendant, if proved by the evidence to your reasonable satisfaction, is a fact in the case which you should consider in passing upon his guilt or innocence, for the law presumes that one whose character is good is less likely to commit crime than one whose character is not good. But if all the evidence, including that which has been given touching the previous good character of defendant, shows him to be guilty, then his previous good character cannot justify, excuse, palliate or mitigate the offense.

"You are further instructed that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight you will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relation to or feeling toward the defendant or the Peter Hauptmann Tobacco Company, and the probability or improbability of his statements, as well as all the facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony.

"The defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf, and the interest he has at stake in the case may be considered by you in determining the credibility of his testimony.

"The court instructs the jury that if they find and believe from the evidence that the defendant bought or received the cigars in question in good faith from one

having possession and without knowledge or reason to believe that they were stolen, you must acquit the defendant of the charge of having bought or received them knowing them to be stolen.

"The court instructs the jury that they are at liberty to convict the defendant on the uncorroborated testimony of an accomplice alone if they believe the statements as given by said accomplice in his testimony are true in fact and sufficient in proof to establish the guilt of the defendant; but the jury are instructed that the testimony of an accomplice in crime, when not corroborated by some person or persons not implicated in the crime, as to matters material to the issues, that is, matters connecting the defendant with the commission of the crime charged against him and identifying him as the perpetrator thereof, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

Thereupon the defendant prayed the court to instruct the jury as follows:

"The court instructs the jury that if the owner of the cigars parted with the property and the possession of the cigars in question you must acquit the defendant."

Which said instruction the court refused, to which action of the court in refusing said instruction defendant, by his counsel, then and there duly excepted.

The jury returned a verdict finding the defendant guilty of receiving stolen property of the value of thirty dollars or more, knowing the same to have been stolen, as charged in the first count of the information, and assessing his punishment at imprisonment in the penitentiary for two years.

It appears from the record that before the trial was entered into defendant filed a motion to quash both counts of the information, which was overruled, and

defendant insists that the court, in so doing, committed error.

The information, leaving off the formal parts, is as follows:

"W. Scott Hancock, assistant circuit attorney in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:

"That Frank Kosky, on or about the twenty-fifth day of February, in the year one thousand nine hundred and four, at the city of St. Louis aforesaid, twelve hundred cigars of the value of forty-two dollars, the goods and personal property of the Peter Hauptmann Tobacco Company, a corporation, then lately before feloniously stolen, taken and carried away from the said Peter Hauptmann Tobacco Company, a corporation as aforesaid, with the intent on the part of the thief to permanently deprive the owner of the use thereof feloniously and fraudulently did from the said thief buy, receive, have and take into his possession, with the intent and for the purpose of aiding the said thief and with the fraudulent intent to deprive the owner of the use thereof, the said Frank Kosky then and there well knowing the said goods and personal property to have been stolen, taken and carried away, with the intent on the part of the thief as aforesaid to permanently deprive the owner of the use thereof; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

"And so the said W. Scott Hancock, assistant circuit attorney as aforesaid, upon his official oath aforesaid, information further makes as follows:

"That Frank Kosky, on or about the twenty-fifth day of February, in the year one thousand nine hundred and four, at the city of St. Louis aforesaid, twelve hundred cigars of the value of forty-two dollars, the goods and personal property of the Peter Hauptmann

Tobacco Company, a corporation, then and there unlawfully and feloniously did steal, take and carry away from the owner thereof, with the intent then and there to deprive the owner of the use thereof and to convert the same to his own use, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.''

The State has filed in this court a motion to dismiss the appeal in the case upon the ground that defendant failed and neglected to file an affidavit for appeal in the circuit court. Since the motion was filed this same question has been passed upon by this court in the case of State v. Smith, 190 Mo. 706, in which it is ruled that no affidavit for appeal is necessary in criminal cases.

There are several objections urged against the first count of the information, the first of which objections is that the information fails to describe with sufficient certainty the cigars which defendant is charged with receiving, knowing them to be stolen. As a general rule, property alleged to have been stolen should be described with as much certainty as the circumstances connected with the theft will permit, but a minute description is not necessary. The description must be sufficient, however, to apprise the defendant of what property he is charged with stealing.

In the case of Commonwealth v. Campbell, 103 Mass. 436, defendant was indicted for receiving stolen goods, described therein as thirty yards of cloth of the value of one dollar and twenty cents a yard; thirty yards of cloth, of the value of one dollar and four cents each yard; fifteen yards of cloth, of the value of one dollar and thirty cents each yard; one hundred yards of cloth, of the value of one dollar each yard. It was held that the description of the stolen goods, ''as so many yards of cloth of a certain value was sufficiently definite, and was supported by proof that they were like pieces

State v. Kosky.

of any kind of cloth not manufactured into a different shape.''

In Commonwealth v. Shaw, 145 Mass. 349, the defendant was charged in an indictment with embezzling thirteen hundred and twenty pairs of shoes, each pair of the value of one dollar, of the property, etc. Defendant moved to quash the indictment because there was no sufficient allegation or description of the property alleged to have been stolen. Held, the description was sufficient, and that a description of a chattel by its proper and special name is sufficient.

No minute description of the cigars could well have been given, and, under such circumstances, to describe them as twelve hundred cigars of the value of forty-two dollars was sufficient.

Nor does said first count charge two separate and distinct offenses, as claimed by defendant. The language of the statute (sec. 1916, R. S. 1899) is: ''Every person who shall buy, or in any way receive, any goods,'' etc. The information is in the exact language of the statute, and is not vulnerable to the objection that it does not inform the defendant of the cause and nature of the accusation against him. There is no merit in the other objections to the first count, and it is, therefore, unnecessary to discuss them. There are also objections urged against the second count of the information, but as defendant was not convicted on that count, it would appear to be unnecessary and superfluous to consider them.

It is said for defendant that the instruction prayed for by him at the close of the State's case, in the nature of a demurrer to the evidence, should have been given. The contention is that there was no evidence to support the verdict, and that if any crime had been established by the evidence, it was under section 1930, Revised Statutes 1899, for obtaining property by personating another. But in this case Fleming did not obtain the cigars by personating another, but by falsely and fraud-

ulently representing to Peter Hauptmann Tobacco
Company that he had come for cigars which had been
ordered by the Wolff-Wilson Drug Company, which or-
der on the said tobacco company defendant himself had
made, over the telephone, in the name of the Wolff-Wil-
son Drug Company, without their knowledge or con-
sent. If Fleming personated any person, who was it?
It was not Walter King, whose name he signed when he
received the cigars, for that name was fictitious. It
was not the Wolff-Wilson Drug Company, for he did
not claim or pretend to be personating them.

It is not infrequently very difficult to determine
from the facts in a given case whether the offense be one
of larceny or of obtaining goods under false pretenses,
but the distinction drawn in the recent decisions of this
court, and which seem to be supported by both reason
and authority is, that where the owner of property is,
by false and fraudulent pretenses, induced to deliver
personal property with the intention of parting with it
altogether, that is, by giving the title as well as the pos-
session, the offense is that of false pretenses. On the
other hand, if the possession is parted with, and not the
right of property, the offense is larceny. [State v.
Mintz, 189 Mo. 268; State v. Buck, 186 Mo. 15; State v.
Copeman, 186 Mo. 108.] Mr. Wharton says: "Sup-
pose A goes to B, and says, 'I am C, sell me these
goods,' and B delivers the goods to A, believing A to
be C, this being an essential incident of the contract;
does any property pass to A? The better view is in the
negative, there being no contract between A and B. If
this be correct, then it is larceny in A to take goods on
this false personation; though there are authorities to
the effect that the case is not larceny but false preten-
ses. If the pretense be, not false personation, but
false statement of means, then, as there is a contract of
sale, the case is false pretense and not larceny. And
where A says, 'I am sent by C to carry the goods to
him,' which is false, and thus obtains only possession

of the goods, this is larceny in cases in which B intends
to part only with the possession of the goods to A.  But
here we encounter a subordinate distinction.  Suppose
A, pretending to be C, goes to B, and fraudulently ob-
tains from B certain goods of C, which are in B's hands
as bailee.  Is this larceny?  It certainly is, because B
has no intention of passing the property in the goods
to A, or to any one, he (B) considering himself to have
no property in the goods to pass.  This distinction has
been vindicated in Massachusetts in the following case:
'Sanderson had left his watch at a watchmaker's to be
repaired, and the defendant went to the shop, pretend-
ing to be Sanderson, asked for the watch, paid for the
repairing, and took the watch with a felonious intent.'
'These acts,' said CHAPMAN, J., 'constitute larceny at
common law.  The case is like that of Rex v. Long-
streeth, 1 Mood. C. C. 137.  The defendant in that case
went to a carrier's servant, and obtained from him a
parcel by falsely pretending to be the person to whom
it was directed.  It was held to be larceny, because the
servant had no authority to deliver it to him, so that no
property passed to him, but the mere possession felon-
iously obtained.  So in this case the watchmaker had
no authority to deliver the watch to the defendant, and
the latter obtained no property in it, not even the qual-
ified property of a bailee, but a mere felonious posses-
sion, which is the essence of the crime of larceny.' "
[Wharton's Crim. Law (10 Ed.), vol. 1, sec. 888, and
cases cited.]  In Harris v. State, 81 Ga. 758, it is said:
"The rule is, that 'if one, meaning to steal another's
goods, fraudulently prevails on the latter to deliver
them to him, under the understanding that the property
in them is to pass, he commits neither larceny nor any
other crime by the taking, unless the transaction
amounts to an indictable cheat.  But if, with the like
intent, he fraudulently gets leave to take possession on-
ly, and takes and converts the whole to himself, he be-
comes guilty of larceny; because, while his intent is thus

to appropriate the property, the consent which he fraudulently obtained covers no more than the possession.' [1 Bishop's Crim. Law, sec. 583, and authorities there cited.] In this case, Harris fraudulently represented to High & Ryan's Sons that he was the agent of Moore & Marsh. They did not sell him the goods, nor did they intend the title to go into Harris; but they simply delivered him the custody of the goods, to be delivered by him to Moore & Marsh. He having converted the proceeds of the sale of the boxes to his own use, he was guilty of larceny. The title still remained in the vendor. Harris got the custody of the goods wrongfully and fraudulently."

In State v. Lindenthall, 5 Rich. L. R. (S. C.) 237, it was ruled that a person who obtained the possession of goods by consent of the owner for one purpose, such as hiring or carrying, with the intent to steal, and consummated that intention partly or entirely by converting the goods to his own use, is beyond doubt guilty of larceny. In State v. Mintz, 189 Mo. l. c. 288, it is said that, as "Rector obtained the goods from the railroad company for a particular purpose, that of delivery to the shoe company, he acquired no sort of title or ownership to the property, but a mere bare possession. The authority of the railroad company in respect to the goods in dispute was limited; they were only authorized to deliver the possession to the consignee or its authorized agents."

In the case at bar there can be no kind of pretence that the Peter Hauptmann Tobacco Company intended to part with the title to the cigars, when they were delivered to Fleming, the purpose of the delivery being entirely conditional; that is, that they were to be taken to and delivered to the Wolff-Wilson Drug Company. Upon the other hand, it is entirely clear from the evidence that Fleming intended to steal the cigars, and by fraud got leave to take possession only, and then took them and converted them to his own use, because while

his intent was thus to get possession of and appropriate the property, the consent which he fraudulently obtained covered no more than the possession. The tobacco company did not sell him the cigars, nor did they intend that the title to them should pass to him, but they simply delivered him the custody of the cigars, to be delivered by him to the Wolff-Wilson Drug Company. He, having sold and converted the cigars to his own use, was guilty of larceny. The title still remained in the tobacco company. Fleming got the cigars wrongfully and fraudulently.

There was evidence upon the part of the State which tended to show that defendant planned the larceny, and was the projector and primary cause. This being so, defendant's counsel contends that he was guilty of stealing the goods, and expresses much surprise at his conviction for receiving stolen goods, and says that "the curious anomaly is presented of the conviction of a man for receiving from himself goods stolen by him." If the evidence was all to the effect that defendant stole, or was a party to the theft, there would be merit in this contention, but it was not. Defendant testified that he had nothing whatever to do with stealing the cigars, but that he did thereafter buy them from and pay Fleming for them, and that Fleming delivered them to him. The jury, upon this branch of the case, must have believed the defendant, and they found him guilty of receiving stolen property, knowing it to be stolen, and there was substantial evidence to sustain this finding.

The only question remaining is as to the sufficiency of the evidence to support the verdict. The character and habits of Fleming, with which defendant was familiar, would, we think, have put any prudent man upon inquiry as to how he acquired them when he offered to sell, and defendant was wanting to buy, twelve hundred cigars. Especially is this true, when the boy was a common loafer and lounger, without means or property, and offered to sell and did sell to defendant the

cigars for so much less than their value. He must have known or believed they were stolen.

The instructions, as applicable to the first count in the information, are free from objection. It is unnecessary to pass upon the others, as they are not involved in the consideration of this case.

Finding no reversible error in the record, the judgment is affirmed.

All concur.