NAFTZGER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    October 24, 1912.)

No. 3,619.

1. RECEIVING STOLEN GOODS (§ 7*)—INDICTMENT—FEDERAL COURT—JURISDICTION.

In order to sustain federal jurisdiction of an offense of receiving stolen stamps, it was necessary that the indictment charge, and the proof show, that the stamps had been stolen from the United States.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. §§ 9–14;  Dec. Dig. § 7.*]

2. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE—MATTERS OF GENERAL KNOWLEDGE.

In a prosecution for receiving stolen stamps, the court would take judicial notice that it is unusual to buy stamps elsewhere than at post offices, except in nominal amounts; that, except in small sums, stamps are not used as exchange; that they have but one value, which is their face value; that "postage due" stamps have no money value, and cannot regularly be in the possession of any one but postal officials; and that banks, railway and insurance companies, mail order houses, and other concerns buy and have on hand many thousands of dollars in postage stamps every year.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 295½, 700–717;  Dec. Dig. § 304.*]

3. INDICTMENT AND INFORMATION (§ 167*)—UNNECESSARY ALLEGATIONS—PROOF.

An indictment for receiving stolen stamps alleged that the stamps had been stolen from the United States at certain post offices of the United States in the state of Kansas, and that the name of each of said offices and the particular stamps stolen from each was to the grand jurors unknown.  Held, that the allegation that the stamps were stolen from "certain post offices in the state of Kansas" was unnecessary; but, having been alleged, the government was bound to prove the fact as laid.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 531;  Dec. Dig. § 167.*]

4. RECEIVING STOLEN GOODS (§ 8*)—STAMPS—EVIDENCE.

In a prosecution for receiving stolen stamps, evidence held insufficient to warrant a finding that the stamps were stolen from the United States.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. §§ 15–18;  Dec. Dig. § 8.*]

5. CRIMINAL LAW (§ 535*)—EVIDENCE—EXTRAJUDICIAL CONFESSION.

In a prosecution for receiving stolen stamps, knowing them to have been stolen, a conviction could not be sustained on defendant's extrajudicial confession, or on his acts or declarations, without corroborative proof that the stamps were in fact stolen.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1225, 1226;  Dec. Dig. § 535.*]

6. CRIMINAL LAW (§§ 419, 420*)—EVIDENCE—POST OFFICE INSPECTOR'S REPORTS—HEARSAY.

In a prosecution for receiving stolen stamps, alleged to have been stolen from the government, an abstract of post office inspector's reports to the inspector in charge, reciting the results of their investigation of post office robberies within the state, was inadmissible, as hearsay.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 973–983;  Dec. Dig. §§ 419, 420.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7.** RECEIVING STOLEN GOODS (§ 8*)—EVIDENCE—POST OFFICE ROBBERIES—INSPECTOR'S REPORTS.

In a prosecution for receiving stolen stamps, reports of post office inspectors as to post offices robbed prior and subsequent to the time defendant was charged with having received the stamps, were inadmissible as bearing on the issue of defendant's guilty knowledge.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. §§ 15–18; Dec. Dig. § 8.*]

**8.** INDICTMENT AND INFORMATION (§ 71*)—ALLEGATIONS—CERTAINTY.

An indictment charged accused with having received an aggregate value of postage stamps, the property of the government, at a place within the jurisdiction of the court, and at a time named, from B., for conversion, knowing the same to have been stolen from one or more post offices within the United States. It did not allege by whom the stamps were stolen, nor when, nor did it charge what denominations, and number of stamps of any particular denomination or denominations, were received, alleging that the number and denomination of the stamps, the names of the post offices from which the stamps were stolen, and the names of the parties who stole the stamps were to the grand jury unknown. *Held* that, since the allegation that a fact is "to the grand jury unknown" is permissible only when the grand jury does not have and cannot obtain knowledge of the facts, while it was not essential that the indictment charge the names of the persons who sold the stamps, it was nevertheless demurrable for uncertainty in failing to particularly describe the stamps, and to charge the time and post offices from which they were stolen.

[Ed. Note.—For other cases, see Indictment and Information, Cent Dig. §§ 144, 174, 193, 194; Dec. Dig. § 71.*]

Hook, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

L. S. Naftzger was convicted of receiving stamps, knowing the same to have been stolen, and he brings error. Reversed and remanded, with directions.

L. S. Naftzger was indicted for receiving and converting to his use property of the United States, knowing that the same had been stolen. The indictment was in four counts; the dates when he received the stamps and the value thereof being alleged by counts, as follows:

| | | |
|---|---|---|
| (1) January 17, 1910 | $727 | 00 |
| (2) June 13, 1910 | 300 | 00 |
| (3) July 6, 1910 | 350 | 00 |
| (4) July 27, 1910 | 191 | 45 |

There was a jury trial, resulting in acquittals under counts 1, 2 and 4, and a conviction under count 3. There was a judgment for the payment of a fine and imprisonment, followed by this writ of error.

S. B. Amidon, of Wichita, Kan., and Charles Blood Smith, of Topeka, Kan. (D. M. Dale and Jean Madalene, both of Wichita, Kan., on the brief), for plaintiff in error.

H. J. Bone, U. S. Atty., of Topeka, Kan., and McCabe Moore, Asst. U. S. Atty., of Kansas City, Mo.

Before SANBORN and HOOK, Circuit Judges, and SMITH McPHERSON, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SMITH McPHERSON, District Judge. [1] 1. It is alleged in the third count that the defendant received the stamps from Frank S. Burt, knowing that the same had been stolen; "the said stamps having been feloniously stolen from the United States at certain post offices of the United States in the state of Kansas, the names of said post offices and the particular stamps stolen from each being to the grand jurors unknown." Without the allegation that the stamps had been stolen from the United States, the District Court would have been without jurisdiction. It follows that such allegation must be supported by competent testimony to sustain the judgment in question. At the close of all the testimony, defendant moved for a direction to the jury to return a verdict of acquittal, which was overruled.

Most of the testimony was to the point whether defendant, at the time he purchased the stamps, knew that they were from an unauthorized source. As against him there was testimony as to the unusual quantity of stamps; that he hesitated before buying; that he bought them at a discount, and did not ask from whence Burt obtained them; there were four purchases; in the last purchase there were "postage due" stamps and stamps of large denomination; what he said and his conduct after the transactions were all concluded; that he resold part of the stamps at a discount, but at a profit; and facts tending to show that the purchases were unusual by a banker and experienced business man. As favorable to him was testimony of his good character; that he bought and received the stamps, with knowledge of the bank officials and clerks at the bank, during business hours; that he purchased them from Burt, the city chief of police; that the first two purchases were for the bank, it receiving the profit; that all the purchases were covered by checks, of which records were made; that his sales were covered by checks; that he did not invoice the stamps, and did not know there were stamps for "postage due" or stamps of unusual denomination; that he promptly disclosed to the post office inspector and bank examiner the transactions when inquiry was made.

[2] There were other facts, of which courts take judicial notice: It is unusual to buy stamps elsewhere than at post offices, except in nominal amounts; except in small sums stamps are not used as exchange; stamps have but one value and that is the face value; that "postage due" stamps have no money value, and cannot regularly be in the possession of any one other than postal officials; and that banks, railway and insurance companies, mail order houses, and other concerns buy and have on hand many thousands of dollars in postage stamps every year. New Mexico ex rel. McLean v. Denver, etc., R. R., 203 U. S. 38, 51, 27 Sup. Ct. 1, 51 L. Ed. 78; Waters-Pierce Co. v. Deselms, 212 U. S. 159, 174, 29 Sup. Ct. 270, 53 L. Ed. 453; vol. 4, Wigmore on Evidence, § 2580; vol. 1, Greenleaf on Evidence, § 6.

[3] 2. Counsel for the government contend that the recital of the indictment that the stamps were stolen from "certain post offices in the state of Kansas" is surplusage, and need not be proven, and that it sufficed if made to appear that they were stolen elsewhere from the government. We are of the opinion that, if the allegation had omit-

ted the words quoted, it would have been sufficient; but, having been alleged, the evidence must conform to and support the allegation. The return of an indictment is the work of the grand jury only—a co-ordinate branch of the court. It is for that body, and for no other officer, to say what shall and what shall not be charged, because the fifth amendment to the Constitution declares that:

"No person shall be held to answer * * * for an infamous crime, unless on a presentment or indictment of a grand jury."

In effect the government now insists on amending the indictment by striking out the words "from various post offices in the state of Kansas." That was what was in fact done in the case of Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849, a case against a national bank officer for falsifying the books with intent to deceive the United States, depositors, and others, "and the Comptroller of the Currency." The words "Comptroller of the Currency" need not have been alleged. Those words, on motion of the United States attorney, were stricken out by the court as surplusage. After conviction the Supreme Court, in habeas corpus proceedings, held the judgment to be void. It was conceded that there was no necessity to allege that the Comptroller was deceived, as we concede that it would be a crime to knowingly receive stolen stamps from wheresoever stolen from the government. But it is alleged that the stamps were stolen within the state of Kansas.

An indictment is for the purpose of conferring jurisdiction and advising the court of the charge, and to advise the defendant of what he must meet; and if, after thus advising the defendant that the stamps were stolen in Kansas, the government can be allowed to show that they were stolen in some other state, such an allegation is misleading, and can be used as a snare to deceive a prisoner. In Iowa, for keeping a gambling house, an indictment is sufficient which charges the building to have been within the county. But in State v. Crogan, 8 Iowa, 523, the allegation was that the building was on a certain lot within the county. The evidence showed that the building was on a lot other than as charged. Held, that a verdict of acquittal should have been directed; the opinion reciting:

"In this case it was not necessary for the pleader to have stated the location of the house kept, further than to show the proper venue. Having alleged, as a matter of local description, that it was upon a particular lot, the proof should have sustained the allegation. The instruction should have been given"—citing section 281, Wharton's Criminal Law, and other authorities.

[4] 3. But our conclusion rests upon a broader basis, and that is that the testimony is wholly inadequate to support a finding that the stamps had been stolen from the government at any place or places. As before stated, the courts take judicial notice of the general business affairs of the country. It takes no evidence to show that many large concerns buy and use thousands of dollars of stamps during a limited period. And if these stamps were stolen from one of such concerns, the receiving thereof with guilty knowledge would not constitute a crime against the United States. There is no sound reason

200 F.—32

for saying that there is a presumption that the stamps were stolen from the United States, rather than from others who had bought them from the government.

Burt was the chief of police of the city, and believed by all to be an upright officer. He concedes in his testimony for the government that he at no time told defendant from what source he had obtained the stamps. At the trial he testified that he had obtained them from one Callahan, the keeper of a "fence" for stolen property. Where Callahan obtained them is not disclosed in the record. There is no testimony in the case that defendant at any time knew that they came from Callahan, and he had never heard of the man Callahan. And still further: There is no evidence as to where nor from whom Callahan received them, nor whether he received them lawfully, or unlawfully or whether from a post office, or from others having bought them from the government. The only showing is that Callahan is a bad man, and that he sold the stamps at a heavy discount. It is no answer to say that receiving the stamps with guilty knowledge is the gist of the allegation. The stamps must have been stolen from the government, and the court correctly charged the jury:

"That the government must prove beyond a reasonable doubt * * * that those stamps were stolen from post offices in this state."

And such is the statute under which the indictment was returned. Criminal Code, § 48 (Act March 4, 1909, c. 321, 35 Stat. 1098 [U. S. Comp. St. Supp. 1911, p. 1603]).

[5] But it is contended that evidence and testimony with reference to defendant's knowledge, such as his statements and acts subsequent to the purchase, tend to show that the stamps were stolen. It is not contended that defendant at any time made a confession of guilt. But, if he had made a confession out of court, such confession would not supply the requisite proof that the stamps had been stolen. A conviction upon extrajudicial confession, or acts or declarations of a prisoner, will not be sustained, without corroborative proof that the property was in fact stolen. Roberts v. People, 11 Colo. 213, 17 Pac. 637; State v. Keller, 8 Idaho, 699, 70 Pac. 1051; Bergen v. People, 17 Ill. 426, 65 Am. Dec. 672; Collins v. Commonwealth, 15 Ky. Law Rep. 691, 25 S. W. 743; Richardson v. State, 80 Miss. 115, 31 South. 544; Hunt v. State, 135 Ala. 1, 33 South. 329; Matthews v. State, 55 Ala. 65, 28 Am. Rep. 698 (rape); Stringfellow v. State, 26 Miss. 157, 59 Am. Dec. 247 (rape); Gray v. Commonwealth, 101 Pa. 380, 47 Am. Rep. 733 (murder); Flower v. U. S., 116 Fed. 241, 53 C. C. A. 271 (embezzlement); U. S. v. Mayfield (C. C.) 59 Fed. 118 (stealing a letter); U. S. v. Boese (D. C.) 46 Fed. 917 (obscene letter); Campbell v. People, 159 Ill. 9, 42 N. E. 123, 50 Am. St. Rep. 134 (murder); Chezem v. State, 56 Neb. 496, 76 N. W. 1056 (larceny); People v. Lane, 49 Mich. 340, 13 N. W. 622 (assault); South v. People, 98 Ill. 261 (murder); Bartley v. People, 156 Ill. 234, 40 N. E. 831; Semon v. State, 158 Ind. 57, 62 N. E. 626; People v. Lambert, 5 Mich. 349, 72 Am. Dec. 49 (bigamy); vol. 1, Greenleaf on Evidence (16th Ed.) § 213; vol. 3, Wigmore on Evidence, § 3070, and notes.

From these cases it will be seen that the rule is: The allegation need not by other and independent evidence be established beyond a reasonable doubt, but there must be a substantial showing by such other evidence, and a confession or declarations, or acts, together with the other evidence, must establish beyond all reasonable doubt the allegation of the original crime to be true. So that there is required evidence that the stamps had been stolen from the government, and such evidence must be other than things said and done by the defendant.

[6] 4. The state of Kansas is within the fifteenth post office inspector's district, with Mr. Johnson inspector in charge, located at Kansas City, Mo. It was rumored that many post offices in Kansas had been robbed of stamps. Thereupon the inspector in charge put post office inspectors to work on the cases, who made written reports as to each of the post offices alleged to have been robbed; the claim being that something more than 30 post offices in Kansas had been burglarized, some before and others *after* defendant's purchase of the stamps covered by the four transactions pleaded in the indictment.

No one of these inspectors had personal knowledge of the robbery at any one of the post offices, but of necessity such information was imparted by some post office officer or other person claiming to have knowledge. So that any information to the post office inspectors was hearsay. The report of the post office inspectors to the inspector in charge was hearsay of hearsay. The inspector in charge had assistants in his office tabulate these reports, the inspector in charge retaining such tabulations. Again this became hearsay of the two preceding hearsays. The reports themselves were sent to the post office department at Washington and were not produced at the trial. The inspector in charge was produced as a witness in this case, and recited this abstract that had been thus presented to him by the clerks and assistants in his office. There is no statute making these reports admissible as evidence, and there could be no such valid statute covering a criminal case, because so to do would not be confronting the defendant with the witnesses against him. This testimony should have been excluded, as being hearsay and incompetent.

The act of a notary public in protesting a check for lack of funds is in all countries where either the common or civil law prevails entitled to full weight, and well nigh conclusive proof of the fact recited. But in State v. Reidel, 26 Iowa, 430, it was decided, Chief Justice Dillon writing the opinion, that a certificate of a notary could not be introduced in evidence against a defendant in a criminal case, by reason of it being in violation of the constitutional provision that a defendant in such a case must be confronted by the witnesses against him. Under the statute of March 3, 1875 (18 Stat. 479, c. 144 [U. S. Comp. St. 1901, p. 3675]), the record of conviction of a party for stealing government property was conclusive of the fact that the property was stolen, under an indictment against one for receiving such property. That statute was held to be void in the case of Kirby v. United States, 174 U. S. 47, 19 Sup. Ct. 574, 43 L. Ed. 809, as being in violation of the constitutional provision in question. If the solemn act

of a notary in protesting commercial paper, as has been done for centuries, and if pursuant to a statute the adjudication of the guilt of one who steals, cannot be introduced in evidence against another for concealing the same stolen property, without violating a constitutional provision, it follows that departmental rules, investigations, and reports of post office inspectors cannot be received in evidence over the protest of one on trial under indictment.

[7] It is true that the testimony as to the reports of post offices robbed was limited by the court in its charge to the issue of defendant's knowledge. But we are of the opinion that even for that purpose such evidence was inadmissible. And it had no bearing under the issue of whether the stamps had been stolen from the government and was prejudicial. The civil case of Grayson v. Lynch, 163 U. S. 468, 16 Sup. Ct. 1064, 41 L. Ed. 230, holding when a contagious disease among cattle had grown to be an epidemic could be testified to by officers deriving their information from official reports, is not an authority on the question in a criminal case as to whether one or more post offices have been burglarized, nor on the question of whether the defendant had knowledge that he was receiving stolen property.

The motion for a peremptory direction to the jury to find the defendant not guilty should have been sustained.

[8] 5. To the third count of the indictment defendant filed a demurrer, and after verdict a motion in arrest; both urging that the said count was so indefinite and uncertain as to prevent the defendant from pleading the verdict in bar. This count of the indictment charges defendant with receiving an aggregate value of postage stamps, the property of the government, at a place within the jurisdiction of the court, and at a time named, and with having received the same from Burt for conversion, knowing the same to have been stolen from one or more post offices within the state of Kansas. Those are all the allegations in the charging part of the count. It is not charged by whom the stamps were stolen. It is not charged when they were stolen, other than at some time theretofore. It is only charged that the same were stolen from certain post offices within the state of Kansas. The aggregate value is charged, but of what denominations, and number of stamps of any particular denomination or denominations, are not alleged. This count of the indictment is most general, and practically a blanket charge. It is alleged from whom the defendant received the stamps, which was not necessary, under the holding of Kirby v. United States, 174 U. S. 47, 19 Sup. Ct. 574, 43 L. Ed. 809. In that case, however, it was alleged from what post office the stamps were stolen and by whom stolen, and the number of the stamps and their denominations stated—a form of indictment followed in the case of Callahan v. United States (C. C. A.) 195 Fed. 924, recently decided by this court, quite different from the indictment in the case at bar.

It was argued by counsel for the government that it is not necessary to make it appear that the stamps were stolen within the period of the statute of limitations—a proposition possibly correct. An indictment is for the purpose of conferring jurisdiction and to advise

the court of the nature of the charge. And the charge must be made so certain that a verdict thereunder can later be pleaded at bar. But an indictment is for the further purpose of advising the defendant of the charge that he must meet, and all that he must meet. Aside from defendant's corrupt purpose in buying the stamps, the aggregate value of the stamps, and the unnecessary allegation that he received them from Burt, there is not one definite or specific allegation in this count of the indictment. The allegation is that the stamps were taken at certain post offices in the state of Kansas. The names or location of the post offices are not given, and we take judicial notice of the fact that there are more than 1,200 post offices within the state of Kansas. Defendant had the right to meet the allegation that the stamps had been stolen, but could only meet it by investigating this large number of offices, and for an indefinite time in the past.

One can readily see why the government ought not to be compelled to allege by whom stolen, because such fact might not be ascertainable. But, if offices had been robbed, the government through its several agencies knew that fact. Every post master daily knows of the amount of stamps and the denominations thereof his office has on hand. Every office is debited with the stamps supplied on requisitions, and is credited with the sales made, when followed by remittances. If it were a fact that offices had been burglarized, such fact could easily be made known to the grand jury, and the grand jury could and should have apprised the court and the defendant of such fact.

The count in question of the indictment has three recitals "to the grand jury unknown." The number and denomination of the stamps are alleged to be unknown, the names of the post offices from which the stamps were stolen are alleged to be unknown, and the names of the parties who stole the stamps are alleged to be unknown. The last is immaterial under the holdings of the Supreme Court, and there need have been no allegation with reference to that matter. But the first two of said matters are important, and are allegations put in issue by the plea of not guilty, and are allegations that must be sustained by evidence on the part of the government. If post offices had not been burglarized, and stamps taken, later bought by defendant, there should have been no indictment. And if offices had been broken into, the government agencies knew the facts, and specific and definite allegations could easily have been made, both as to the number and the denomination of the stamps stolen and from what offices stolen. It is of great importance that the criminal laws be enforced against violators of the law, and technicalities should not be used as a shield for criminals. But it is of equal importance that the liberty of citizens should be a matter of concern, and, before a person is put on trial for a felony, an indictment should be returned against him, and that such indictment be allegations of fact, and not of recitals "which are to the grand jury unknown." Such allegations are permissible from necessity only when the grand jury does not have and cannot obtain a knowledge of the facts. United States v. Riley (C. C.) 74 Fed. 210 (by Taft, Circuit Judge); State v. Stowe, 132 Mo. 199, 33 S. W. 799,

and the authorities cited in the opinion by Judge Sherwood; Coffin v. U. S., 156 U. S. 432, 451, 15 Sup. Ct. 394, 39 L. Ed. 481.

Of the many cases cited by counsel, and those found by independent investigation, the fact is disclosed to us that apparently there is no case but the name of the post office and when the larceny was committed are recited in the indictment. The recent case of Floren v. United States, 186 Fed. 961, 108 C. C. A. 577, decided by this court, is a case in point, with many of the leading authorities cited by Judge Sanborn in the opinion. The indictment in that case was for posting a nonmailable letter. The letter was not set out in the indictment. The date of the letter was not given, nor was it in any way identified. It was alleged that it was deposited in the mail in a certain county, but the name of the post office was not stated. It was held that the indictment was subject to a motion in arrest of judgment after verdict of guilty.

It should be kept in mind that the elementary and fundamental proposition with reference to a demurrer to an indictment is that a question as to its sufficiency must be considered upon the sole theory that the defendant is presumably innocent. The substance of this indictment is that said stamps, of an aggregate value, without reference to kind or denomination, had been stolen at some unknown place, by some unknown person, at some unknown time. As illustrations, see Pettibone v. United States, 148 U. S. 197, 202, 13 Sup. Ct. 542, 37 L. Ed. 419; United States v. Hess, 124 U. S. 483, 486, 8 Sup. Ct. 571, 31 L. Ed. 516. The language of the opinion in the case of United States v. Cruikshank, 92 U. S. 542, 558 (23 L. Ed. 588), as used by the Chief Justice, is quite appropriate here:

"The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and. second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intents, and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

A concurring opinion of Justice Clifford in the same case is likewise appropriate:

"Descriptive allegations in criminal pleadings are required to be reasonably definite and certain, as a necessary safeguard to the accused against surprise, misconception, and error in conducting his defense, and in order that the judgment in the case may be a bar to a second accusation for the same charge. Considerations of the kind are entitled to respect; but it is obvious that, if such a description of the ingredient of a defense created and defined by an act of Congress is held to be sufficient, the indictment must become a *snare* to the accused, as it is scarcely possible that an allegation can be framed which would be less certain. or more at variance with the universal rule that every ingredient of the offense must be clearly and accurately described, so as to bring the defendant within the true intent and meaning of the provision defining the offense."

The District Court was in error when it overruled the demurrer, and likewise in error when the motion in arrest of judgment was overruled.

The judgment below is reversed, and the case remanded to the District Court, with directions to grant the motion in arrest of the judgment, and to discharge the defendant.

It is so ordered.

HOOK, Circuit Judge. I concur in the reversal of the judgment, but not in all that is said to that end. Nor do I concur in the criticisms of the third count of the indictment, and as their effect is not confined to this case, but affects generally the future administration of justice, I feel I should briefly express my views.

It should be borne in mind that the crime charged is not larceny, but, on the contrary, the receipt by the accused with intent to convert to his own use stolen property of the United States, knowing it to have been stolen. The crime is not accessorial, but a substantive one defined by statute, and all the elements are charged in the indictment. This is not denied, but it is said by my Brothers that the charge is not made with sufficient particularity to make it good in law, and in support of that conclusion various omissions are recited in the foregoing opinion. Let us see what they are:

(1) The name of the party who stole the postage stamps which the accused received is not given. But it is conceded in the opinion that he need not have been named in the indictment. In many cases it would be impossible, and doubtless was impossible here. See Semon v. State, 158 Ind. 55, 62 N. E. 625.

(2) The indictment does not charge when the stamps were stolen, other than "theretofore." But if the crime charged had been the larceny itself, and the date had been specified, the date need not have been adhered to in the evidence. Proof of a time within the statutory limitation would be sufficient even on a charge of larceny. It seems to me that the particular time of the theft is unimportant in a case like this. The details of the theft, when, where, and by whom committed, are not elements of the offense of receiving stolen property, and it is unnecessary to set them out descriptively. See Commonwealth v. Campbell, 103 Mass. 436.

(3) While the aggregate value of the stamps is stated, their number and denominations are not specified. But the description in the indictment is:

"A large number of United States postage stamps of various denominations, the exact number and denominations of said stamps being to the grand jurors unknown, and being of the aggregate denomination and value of three hundred and fifty dollars."

This seems to me quite sufficient. The requirement of my Brothers imposes an impossible task of pleading in this and many other cases of the character. Reflection upon the frequency of post office burglaries, the theft of stamps of various denominations from various offices, the bunching and handling of them for disposal, not by particular description, but by value, the ease of admixture, use, etc., makes obvious the burden imposed. See Miller v. State, 165 Ind. 566, 76 N. E. 245; State v. Kosky, 191 Mo. 1, 90 S. W. 454. In the first of

these cases may be found quite a list of descriptive recitals which have been held sufficient.

(4) That while the indictment charges the stamps were stolen from "certain post offices in Kansas," the names or locations are not given. Yet, as I read the foregoing opinion, it is elsewhere said that the above-quoted words might properly have been omitted. See State v. Crawford, 39 S. C. 343, 17 S. E. 799. In this case it was held that the indictment need not state either the time or place of the larceny.

The above are the omissions which it is held render the indictment fatally defective. I cannot, however, avoid the conviction that it is amply sufficient to advise the accused of the crime charged, and to enable him to plead the judgment in bar of another prosecution. It describes the property as postage stamps; that they were of a specified aggregate denomination and value, and states that they belonged to the United States, but had been previously stolen from post offices in Kansas; also that, knowing the stamps had been stolen and intending to convert them to his own use, the accused received them from a man whose name is given, on or about a date specified, and in Sedgwick county, Kan. What more is needed? It is alleged that the names of the post offices and the stamps stolen from each are unknown to the grand jurors; and that might well be so. The name of the person from whom the stamps were received is given, and, though not necessary to be stated (174 U. S. 47, 19 Sup. Ct. 574, 43 L. Ed. 809), it would nevertheless be of value in identifying the offense, if such identification had not already been made. Hendricks v. United States, 223 U. S. 178, 32 Sup. Ct. 313, 56 L. Ed. 394, is a late evidence of the tendency of the Supreme Court upon the subject of criminal pleading.