THE STATE v. WILLIAM LEVAN, Appellant.

Division Two, December 31, 1924.

1. **JURORS: Spectators at Kindred Trial.** The court did not err in refusing to quash the panel of jurors on the alleged ground that several of them were spectators or jurors at the trial a week earlier of another man at which it was proven that said other man had bought whiskey and had seen gambling going on in defendant's pool-room within sixty days prior to the trial, where defendant's counsel interrogated several of the jurors on their *voir dire* ex-

amination, and each of them stated that no reference was made in the trial of said other man to the charge against defendant or to any fact or circumstance connected therewith, and that nothing he had heard would affect or influence his verdict in the case against defendant.

2. **RECEIVING STOLEN GOODS: Guilty Knowledge.** Knowledge that goods were stolen may be deduced from conduct and behavior, the character of the person from whom received, the kind of goods, and the hour when received. Testimony that defendant received eight twelve-pound caddies of a well-known standard plug tobacco from a boy known to him to be an ex-convict, who came to the back door of his pool-room by night, and told him he had found them and would sell them for two dollars each, when they were worth more than eight dollars each;. that after defendant had paid for them, but before they were brought in the room, the seller told him he had got two of the caddies out of a railroad car; and that afterwards defendant told the deputy sheriff that he hesitated about buying the tobacco, for he was confident it was stolen, is amply sufficient to support a verdict finding defendant guilty of having received the whole eight stolen caddies, with knowledge that they were stolen goods. The testimony of the deputy sheriff, independently of the suspicious circumstances under which defendant received the tobacco, alone warranted the jury in finding that he received it with guilty knowledge that it was stolen property.

3. **VERDICT: Punishment: Jury Unable to Agree: Further Instruction: Assessment by Court: No Exception.** Eight twelve-pound caddies of plug tobacco of the alleged value of $71.04 had been stolen from a railroad car, and defendant was charged with having unlawfully and feloniously received them, knowing they were stolen property. He bought them for sixteen dollars from an ex-convict, who at first told him he had found them in a certain ball-park, but, after receiving payment for them but before delivering them, told him he had got two of them out of the railroad car. Defendant claims that he can at most be charged with knowledge that those two were stolen, and as they were worth less than thirty dollars, the court erred in so instructing the jury as to permit them to find he had received stolen goods of the value of thirty dollars. The court instructed the jury that if they found the defendant guilty of knowingly buying stolen property of the value of thirty dollars or more they should assess his punishment at imprisonment in the penitentiary for not less than two or more than five years, and if they found the value of the goods to be less than thirty dollars they should assess his punishment at imprisonment in the county jail not exceeding one year, or by a fine, etc., but did not instruct them

State v. Levan.

that it was a part of their duty to assess the punishment. They deliberated for a time and reported to the court that they could not agree; that they were unable to agree upon the punishment. The court then prepared an instruction, in the form of a verdict, reciting that the jury "find the defendant guilty of buying stolen property knowing it was stolen when he bought ·it, and as charged, and that the value of the goods was ——— dollars, and we are unable to agree upon the punishment." No objection was made or exception saved by defendant, to the giving of this instruction, and the jury filled in the words "Sixty-seven and 20-100" in the blank space, and returned the paper as their verdict, and thereupon the court fixed defendant's punishment at two years' imprisonment in the penitentiary. *Held, first,* that an exception or objection to the giving of the instruction, made for the first time after the jury had returned their verdict, came too late; *second,* that it would have been proper if the court, in its first instruction, had told the jury that, if they were unable to agree upon the punishment, the court would assess it, but it was not error not to include such statement in the instruction; *third,* the court did not err in submitting a form of verdict which enabled the jury to act in accordance with the statute; and, *fourth,* the court was expressly authorized by·the statute (Sec. 4048, R. S. 1919) to assess the punishment under the circumstances.

Citations to Headnotes: 1, Juries, 35 C. J. par. 34; 2, Receiving Stolen Goods, 34 Cyc. 527, 529; 3, Criminal Law, 16 C. J. pars. 2602, 2613.

Appeal from Scott Circuit Court.—*Hon. Frank Kelley,* Judge.

AFFIRMED.

*Jesse W. Barrett,* Attorney-General, and *Harry L. Thomas,* Special Assistant Attorney-General, for respondent.

(1) The findings of the trial court as to competency of jurors will not be disturbed unless appearing to be clearly ·wrong or an abuse of discretion. State v. Jackson, 169 Mo. 291; State v. Williamson, 106 Mo. 162; State v. Poor, 286 Mo. 644. (2) There was substantial evidence of appellant's guilt. Appellant must, from the

circumstances, have believed the goods had been stolen. State v. Kosky, 191 Mo. 1; State v. Richmond, 186 Mo. 71. The intent with which the goods were received is not made an element of the offense. Knowledge of theft is the determining element. State v. Rich, 245 Mo. 162. Evidence as to the six caddies of tobacco was admissible, it being immaterial whether the same had been stolen from the car by Freeman or actually taken out by some other person. No variance material to the merits of the case and prejudicial to appellant was found by the trial court. State v. Tracy, 294 Mo. 372. (3) Appellant was present when the verdict was received. The right to be present is statutory, and does not include counsel. R. S. 1919, sec. 4008. (4) Appellant complains of the action of the court in submitting a form of verdict whereby the guilt or innocence might be determined but the punishment left undetermined. The jury had previously reported to the court its inability to agree as to punishment although agreed as to guilt. R. S. 1919, sec. 4048; State v. Hubbs, 294 Mo. 224; State v. Gilbreath, 130 Mo. 500; State v. Emery, 76 Mo. 348; Fooxe v. State, 7 Mo. 502. The form submitted fails to bear out appellant's contention of "the court instructing the jury in writing that the court could and would fix punishment if the jury returned a verdict of guilty."

HIGBEE, C.—On March 5, 1923, an information was filed in the Circuit Court of Scott County, charging that the defendant, at said county, on or about January 29, 1923, unlawfully and feloniously did buy and receive eight twelve-pound caddies of star tobacco of the value of $71.04, of the goods and chattels of the St. Louis-San Francisco Railway Company, a corporation, then lately before feloniously stolen, taken and carried away, he, the said William Levan, then and there well knowing the said goods and chattels to have been feloniously stolen, taken and carried away as aforesaid, etc. The

information is based on Section 3331, Revised Statutes 1919.

The case was tried and the jury returned the following verdict on March 15, 1923:

"We, the jury find the defendant guilty of buying stolen property knowing it was stolen when he bought it and as charged and that the value of the goods so bought was of the value sixty-seven and 20-100 dollars, and we are unable to agree upon the punishment."

The court fixed the punishment at two years' imprisonment in the penitentiary. Motions for new trial and in arrest were filed and overruled, the defendant was duly sentenced to imprisonment in the penitentiary for a term of two years, and appealed.

I. The first complaint in the motion for new trial is that the court erred in refusing to quash the panel of jurors for the reason that several of them were spectators and jurors in the case of the State v. Jeffries, tried March 12, 1923, at which it was proven that Jeffries had bought whiskey and had seen gambling going on in Levan's poolroom within sixty days prior to the trial, and that such evidence was prejudicial to defendant and prevented the jury from giving defendant a fair trial. The defendant's counsel interrogated several of the jurors, each of whom on his *voire dire* said nothing he had heard would affect or influence his verdict in the case on trial, and that no reference was made by any witness at the Jeffries trial to the charge against Levan, or to any fact or circumstance in connection therewith. The motion to quash was properly overruled.

II. The evidence for the State was to the effect that the Liggett & Meyers Tobacco Company, on January 27, 1923, shipped nineteen boxes of plug tobacco and three cases of smoking tobacco over the St. Louis-San

Francisco Railroad (locally known as the Frisco), from St. Louis, Missouri, in car 124,521 S. F., consigned to Blackwell & Taylor at Morehouse. This shipment included one package of eight twelve-pound caddies of Star plug tobacco, strapped together, of the value of $67.28, as shown by the evidence. The car was sealed and, when it arrived at Chaffee, in Scott County, it was sealed and in good condition. Theodore Freeman, who admitted he had served a term in the reform school for burglary and larceny, testified that on the evening of January 29, 1923, at about a quarter to seven, he had eight caddies of tobacco; got two out of the Frisco car and the other six on the west side of the track, over on the west side of the freight house, south end of the Frisco yards, in Chaffee, Missouri, down close to the ball park; some was out of the car, two boxes were in it. He took the caddies of tobacco behind Kroger's store, set them down in the alley and went over and tried to sell the tobacco to Mr. Levan. Levan said he would give Freeman sixteen dollars for it. Freeman first told Levan that he had found the tobacco out at the ball park; then said he got it over on the team tracks. This was just after Levan had paid him. When he finally made the deal, Freeman told Levan he had brought it over behind Kroger's store. Freeman said the car was open on the west side; he didn't know who broke into it; he delivered the eight caddies to Bill Levan about 7:30 at night; it was dark. On cross-examination he testified: "I carried it through the alley in back of Levan's pool-room. First, I told him I found it, and after he paid me for it, the next thing I told him where I got it. I told him I got two out of the car—the other six were already out."

Tom Scott, deputy sheriff, identified the eight boxes of star tobacco. He got them out of Levan's pool-room. Levan told witness he bought them from Theodore Freeman. He said Freeman came there and wanted to sell him this tobacco and he hesitated about buying it

The margin label "Facts of Case." appears beside the first paragraph.

for he was confident it was stolen; finally he said: "He just insisted until I bought it; it was so cheap I couldn't hardly keep from buying it." He said he knew the Freeman boy had been in the reform school, but didn't know what he had been there for.

The eight caddies of tobacco were identified as part of the shipment of tobacco from Liggett & Meyers Tobacco Company above mentioned. On checking up the way bill of this shipment in the car referred to, it was found short this package of eight caddies. The car was on house track 1 at the south end of the freight house.

William Levan, the defendant, testified: " I bought eight caddies of star tobacco from Theodore Freeman last January. I was in my pool-room in Chaffee, Missouri; he told me he found it in the ball park by the Frisco railroad. I told him I didn't want it; he turned and started off and came back and said: 'I want to sell it to you, its all right.' I told him I would take it and he delivered it to me. He said nothing about the tobacco being stolen. I never denied to Tom Scott or anybody that I bought this tobacco from Freeman. I took Scott to my pool-room and delivered this tobacco to him. I never told Scott or anybody else this boy said anything about this tobacco being stolen. I knew nothing about it having been stolen; if I had known it I wouldn't have bought it. At the time we made the deal, Freeman had the tobacco out back of the pool-room. I don't know whether he said he had it out there. When he first came in he told me he had eight caddies of tobacco; told me he found it down there in the ball park and would take sixteen dollars for it; said there was eight caddies of star tobacco. I told him all right. It was brought in at the back door about 7:30."

III. The appellant, in his motion for new trial, does not challenge the sufficiency of the evidence that

these eight caddies of tobacco were part of the shipment consigned to Blackwell & Taylor at More-house and delivered on board car 124,521 S. F.; that the car was sealed and arrived at Chaffee sealed and in good condition, or that the eight caddies of tobacco which he admits he bought from Free-man were a part. of this particular shipment. His con-tention is that at the time he bought the tobacco he did not have actual knowledge that it was stolen property; that the evidence fails to show that six of the caddies were stolen and the value of the two stolen caddies was less than thirty dollars, and that the court erred in not directing the jury to return a verdict for the defendant as to the charge of buying stolen property of over the value of thirty dollars.

*Guilty Knowledge.*

In State v. Richmond, 186 Mo. 71, 87, 84 S. W. 880, Judge GANTT quoted from Cobb v. State, 76 Ga. 664: "Knowledge may well be deduced from conduct and behavior, *the character of the person from whom re-ceived,* and the *kind of goods,* and the *hour* when re-ceived."

The defendant received the caddies of tobacco, not in the usual course of business, but under very suspi-cious circumstances. Freeman, known to the defendant as an ex-convict, came to the back door of the defend-ant's pool room by night and told him he had eight caddies of tobacco in the alley; that he had found them and would sell them for about one-fourth of their value. It seems from the evidence that after defendant paid for the caddies, but before bringing them into the build-ing, Freeman told defendant he got two of the caddies out of the car, meaning the railroad car. The defend-ant told Scott, the deputy-sheriff, that he hesitated about buying the tobacco, for he was confident it was stolen. If the jury believed Scott's testimony, there can be no doubt of the defendant's guilty knowledge, in-dependent of the suspicious circumstances under which he received the property, which alone would have

warranted the jury in finding that he knew the goods were stolen property. In State v. Kosky, 191 Mo. 1, 16, 90 S. W. 454, Judge BURGESS said:

"The only question remaining is as to the sufficiency of the evidence to support the verdict. The character and habits of Fleming, with which defendant was familiar, would, we think, have put any prudent man upon inquiry as to how he acquired them when he offered to sell, and defendant was wanting to buy, twelve hundred cigars. Especially is this true, when the boy was a common loafer and lounger, without means or property, and offered to sell and did sell to defendant the cigars for so much less than their value. He must have known or believed they were stolen."

See also State v. Rich, 245 Mo. 162, 167, 149 S. W. 464.

There was ample evidence in the circumstances of this case to warrant the jury in finding that the eight caddies of tobacco were all stolen from the railroad car; they were found in the exclusive possession of the defendant recently thereafter. From these facts the jury was authorized to find that the defendant received them with the knowledge that they were stolen, if he failed satisfactorily to explain how he acquired their possession. [State v. Miller, 159 Mo. 113, 120, 60 S. W. 67.] See also 34 Cyc. 523-5; Kelley's Crim. Law, sec. 684.

IV. The bill of exceptions recites that at the close of the argument the jury retired to consider of their verdict between four and 4:30 P. M.; that the court, at their request, ordered the jury brought into the court room at about 8:30 or nine P. M., when they reported they could not agree on a verdict; that they were unable to agree on the punishment. The court then ordered the jury to retire in charge of the sheriff and, after they had remained in the jury room about thirty minutes, the court prepared in blank form the verdict which was afterwards returned in this case. The jury filled in the blank form of

*Timely Exception.*

verdict with the words and figures, ''Sixty-seven and 20-100.'' The bill of exceptions continues: ''Thereafter, on the morning of March 16, 1923, at nine o'clock A. M., at which time the defendant's counsel first learned of said verdict being returned by the jury, then and there duly objected and excepted to the giving by the court to the jury the aforesaid form of verdict and to the receipt of said verdict by the court.'' The recitation is that counsel first learned the following morning the *verdict had been returned.* It is not claimed that counsel was absent or that an exception was saved at the time to the action of the court complained of. It was too late, after the return of the verdict, to enter an objection and save an exception to the action of the court on the previous day.

V. After the jury had been out about eight hours they returned and reported to the court in substance that they had agreed on a verdict of guilty, but could not agree on the punishment to be inflicted. The court had properly instructed the jury that if they found the defendant guilty of knowingly buying stolen property of the value of thirty dollars or more they should assess his punishment by imprisonment in the penitentiary for a term of not less than two years nor more than five years, and that if they found the value to be less than thirty dollars they should assess his punishment by imprisonment in the county jail not exceeding one year or by a fine not exceeding one hundred dollars, or by both such fine and imprisonment.

Section 4048, Revised Statutes 1919, reads: ''Where the jury find a verdict of guilty and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, . . . the court shall assess and declare the punishment and render judgment accordingly.''

The court did not instruct the jury it was not a part of their duty to assess the punishment, but instructed them that they should do so if they found the defend-

ant guilty. The statute was enacted to avoid a mistrial if the jury were unable to agree on the punishment by empowering the court to assess the punishment in that contingency. Why should not the jury be distinctly advised of this wise provision of the statute in order that a mistrial might be avoided? This very case affords an illustration of the propriety of so instructing the jury in advance. They reported they had disagreed. Had they known in advance of the statute they could have governed themselves accordingly. They were presumed to know the law, but that is a mere legal fiction. When the judge learned the cause of disagreement was not as to the defendant's guilt but as to the punishment, the form of verdict was submitted that enabled the jury to act in accordance with the statute. It cannot reasonably be said that this was a suggestion on the part of the court to return such a verdict, in view of the report the jury had just made. The law is framed for men of plain common sense and should not be emasculated by refined construction. In State v. Hubbs, 294 Mo. 224, 233, 242 S. W. 675, Judge DAVID E. BLAIR said:

"But in the absence of a mandatory provision of the statute that the jury shall assess the punishment, no good reason appears why the court may not tell a jury, agreed upon guilt but unable to agree upon the punishment and in response to inquiry from the jury, that such verdict will be received. Is it error to tell the jury what the law is when it makes such inquiry? We think not. If the jurors had experimented by returning such a verdict on their own motion, they would have learned just what the court told them when they asked about the law, to-wit, that their verdict was perfectly legal and entirely acceptable in that form."

If the court cannot advise the jury of the provision of this statute in such contingencies, then, in actual practice, the enactment is abortive, through no fault of

the Legislature. However, as a timely exception was not saved, the action of the court in submitting this form of verdict is not properly here for review.

Other errors are complained of in the motion for new trial, but they are without merit. The demurrer to the evidence was properly overruled. The case was fairly tried and submitted by instructions upon all questions of law arising in the case.

The judgment is affirmed. *Railey, C.*, concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.*, absent.