THE STATE v. BILL HUFF, Appellant. — 296 S. W. 121.

Division Two, June 3, 1927.

**1. INTOXICATING LIQUOR: Possession: In Landlord's Premises.** A charge of possession of intoxicating liquor by defendant is not established by proof that he had rented and for sometime occupied three rooms in a dwelling house and that the liquor was found on tables and in a cupboard in that part of the house retained by the landlord, and none on defendant's person, although he was present in the room with the landlord when the liquor was found and broke or emptied some of the bottles containing it.

**2. ———: ———: Definition.** Possession implies dominion and control. To possess intoxicating liquor means to have the actual control, care and management of it, and not a mere passive control or sympathetic interest in the one in actual control.

**3. ———: ———: Suspicion.** The conduct of a defendant who had rented and for sometime had occupied rooms in a dwelling house of a woman who was soon to be his wife, and who was present with her in her kitchen when the kitchen and her bedroom, which parts of the house were retained and occupied by her, were being searched, and broke a bottle containing whiskey and emptied others which both testify belonged to her, and which no testimony shows were otherwise in his possession or under his control, is sufficient to arouse a strong suspicion of his interest in and possession of the liquor, but it is equally as strong that his acts were intended for her protection, and a verdict of guilty cannot be based on suspicion or speculation.

---

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 1590, p. 779, n. 98. **Intoxicating Liquors,** 33 C. J., Section 198, p. 585, n. 98; Section 505, p. 761, n. 53.

Transferred from Springfield Court of Appeals.

REVERSED AND DEFENDANT DISCHARGED.

*Wm. P. Elmer* for appellant.

(1)  The evidence is insufficient to sustain a conviction and the demurrer to the evidence should have been sustained. Suspicion however strong is not sufficient to sustain a conviction. State v. Buckley, 274 S. W. 74; State v. Hollis, 284 Mo. 627, 225 S. W. 225; State v. Bowman, 243 S. W. 110; 3 Rice Crim. Ev. 561; State v. Goodson, 209 Mo. 321; State v. Tullo, 274 S. W. 469. If it may be said the liquor was not found in defendant's home or on his person, then there was no evidence of possession by him, and the demurrer should have been sustained. (2)  Defendant was not shown to have possession of any whiskey. Breaking the bottle to destroy evidence does not prove possession. State v. Blocker, 274 S. W. 1098.

*North T. Gentry*, Attorney-General, and *J. D. Purteet*, Special Assistant Attorney-General, for respondent.

(1)   The demurrer interposed at the close of all the evidence was properly overruled.   This court will not interfere with the verdict of the jury where there is substantial evidence to support same.   It is the peculiar province of the jury to pass on the weight of the evidence.   State v. Alexander, 278 S. W. 711; State v. Huckabe, 269 S. W. 691.   (2)   Evidence of physical control or manual possession of liquor, where there is no evidence that the possession was lawful, is sufficient to sustain the charge.   State v. Blocker, 274 S. W. 1098.

HENWOOD, C.—Appellant was tried in the Circuit Court of Dent County on an information charging him with the unlawful possession of intoxicating liquor.   The jury found him guilty and fixed his punishment at a fine of $200.   Being sentenced accordingly, he asked for an appeal to this court, but the appeal was allowed to the Springfield Court of Appeals.   The case is here now by transfer from that court because of questions involving the Constitution.

On July 4, 1925, and for a short time before, appellant lived in three rented rooms in the home and residence property of Mrs. Alda McRoberts in the town of Salem.   Mrs. McRoberts had lived in Salem for twenty-two years and in this house for twelve years.   The house consisted of six rooms, a pantry and basement.   At the time in question Mrs. McRoberts and appellant were the only occupants of the house.   Appellant was arrested on July 4, 1925, and he and Mrs. McRoberts were married sometime between that day and the day of the trial, which was August 19, 1925.   Appellant and Mrs. McRoberts attended the Fourth of July Picnic at Salem together.   The taxicab driver (Tom Cape), who took them home from the picnic grounds, testified that appellant was intoxicated.   Both the constable (Dill Eaves) and the sheriff (John R. Welch) testified that appellant was intoxicated when they visited the McRoberts house with a search warrant "somewhere around six o'clock in the afternoon."   The constable had seen appellant at the picnic.

When the officers arrived appellant and Mrs. McRoberts were coming out of the basement.   The constable searched the basement immediately, but found nothing but "some empty bottles that had been washed, a dozen or so in a box, that had been washed nice and laid in a box."   Mrs. McRoberts used one room both as a kitchen and dining room.   In a cupboard in this room the constable found two bottles with a little liquid in them which he testified smelled like whiskey and was whiskey.   The sheriff found two other bottles containing a small amount of liquid of the same kind, which he and the constable testified was whiskey.   One of these bottles was found

on the table or dresser in Mrs. McRoberts' bedroom, and the sheriff testified that he found the other bottle on the dining table in the kitchen. On this dining table two drinking glasses were observed with a piece of lemon in each. There was also a sugar bowl on the dining table. About the time the sheriff finished reading the search warrant appellant displayed some resentment as to the search. He poured some water into these drinking glasses, rinsed them and emptied the contents into a spittoon. The sheriff commanded him to sit down, and this he did for a time, but later on, during the progress of the search, he got up and took a bottle from "another cupboard" in the kitchen and broke it across the corner of the table or sewing machine. This bottle was "about a fourth full" and the constable testified concerning its contents, as follows: "I smelled of it there on the floor, and I picked up the glass pieces and smelled of that, and I put my hand down into the whiskey and smelled of that, and they was whiskey in it."

The sheriff says he did not smell the contents of the broken bottle. The other four bottles mentioned, each containing a small amount of liquid, were offered as exhibits at the trial and handed to the jury for their examination.

Appellant took the stand and disclaimed any connection with the bottles of liquor found and any previous knowledge of and concerning the same. When asked about the bottle he broke, he said:

"They had some bottles there that had been in the pantry and the shelves there and all empty. I looked over across the machine and saw this bottle with something in it, and I reached over and broke the bottle against the corner of the sewing machine, and that was all of it. I didn't know it was her stuff when I broke it. I thought maybe it had been set there for a trap. I didn't want the notoriety and talk about her. I had nothing in my possession at all."

He admitted rinsing out the glasses with pieces of lemon in them, while the officers were engaged in making the search, but said they had only lemonade in the glasses. He further testified that he was not boarding with Mrs. McRoberts, but had rented rooms there. In explaining how he happened to engage three rooms, he testified: "Well, I first put in a garden there, and my daughter wrote me that she was coming down with me, and I rented these rooms. Then later on, I got a letter that her sister's husband was dying in California and she went there."

Mrs. McRoberts, who had recently become Mrs. Huff, at the time of the trial, in behalf of her newly acquired husband, testified that the property was hers and that all of the bottles of liquor in question were hers and were found in her kitchen and in her bedroom; that her former husband (Mr. Fisher) bought one of these bottles, containing alcohol, in St. Louis, and left it and some other bottles in

her pantry; that the other three bottles found by the officers contained denatured alcohol purchased by her from local druggists and used by her for rubbing purposes as a treatment for rheumatism, with which she had been afflicted for two years; and that the alcohol left by her former husband could, also, be used for rubbing purposes; that the bottle which appellant broke was a bottle of her rubbing (denatured) alcohol, but, she says, "Mr. Huff didn't understand, he thought they might implicate me in some way." And further testifying, she denied that one of these bottles was on the dining table near the drinking glasses, as the sheriff said; she said that she and appellant had just made some lemonade before the officers came and she invited them to have a glass of lemonade; that they declined lemonade, but did accept a cigar "apiece" from appellant, "and acted like they was glad to get them."

There is some reference in the testimony to an empty whiskey bottle, found by the officers, which had on it a label indicating the issuance of a whiskey prescription to one Redwine. Also as to another empty bottle found by appellant and his friend (the witness Christopher) along the roadside, but the record is not clear as to whether either of these particular bottles were admitted in evidence.

Two witnesses (Peck and Redwine) testified as to appellant's good reputation for law-abiding citizenship, but, on cross-examination, they admitted that, while they had known him for several years, he had been away a good deal and they had not been "around him very much."

This evidence is not sufficient to sustain a judgment of conviction against appellant on the charge of *unlawfully possessing intoxicating liquor*, and his demurrer at the close of all of the evidence should have been sustained. No liquor was found on his person, nor in the rooms rented by him and under his control. It was not, therefore, *in his possession, either actually or constructively*. The evidence does establish, as the State contends, that appellant was intoxicated, and that he felt enough at home in Mrs. McRoberts' kitchen to take from her cupboard and break a bottle containing whiskey, according to substantial evidence in the case. But this evidence, together with all of the other evidence favorable to the State, does not establish that *possession, dominion* and *control* which the law condemns. " 'To possess' means to have the actual control, care, and management of the liquor, and not a passing control, fleeting and shadowy in its nature." [33 C. J. 585, Note 97. See also 6 Words & Phrases, p. 5464.] True, appellant's conduct arouses a strong suspicion of his interest in and, even, of his possession of the liquor in question, but equally as strong, if not stronger, is the suspicion that his acts were intended for the protection of Mrs. McRoberts, soon his wife to be, in whose kitchen and bedroom and in whose presence

the liquor was found. It is not the province of a jury to choose between suspicions, nor to deal in speculative verdicts. And verdicts so obtained, this court will not permit to stand. [State v. Pinto, 279 S. W. 144; State v. Capps, 278 S. W. 695; State v. Buckley, 274 S. W. 74; State v. Goodson, 252 S. W. 389; State v. Singleton, 243 S. W. 147; State v. Ballard, 104 Mo. 634.] See also State v. Zeilkle, No. 27816, decided at this term but not yet reported.

The Springfield Court of Appeals was called upon to deal with a very similar situation in the case of State v. Blocker, 274 S. W. 1098. The defendant Blocker was the proprietor of a cafe. His co-defendant Winters was an employee. Officers came to the cafe with a search warrant. "While the constable was reading the warrant, the deputy constable saw defendant Winters go into a back room and pour something into a jug sitting by a coal oil tank. In the search that followed, the officers examined this jug and found 'white mule,' a name for a certain kind of whiskey, in the jug, with coal oil on top of it." In affirming the conviction as to Blocker and reversing the same as to Winters, Cox, J., speaking for the court, says: "It does not seem to us that the fact that he was employed by Blocker and that he poured coal oil into the jug is sufficient to show that he was in possession of the liquor contained in the jug. The possession of the liquor went with the possession of the building and its contents, and we do not think an effort by an employee to conceal from the officers the presence of the liquor in the building, disconnected from physical control or manual possession of the liquor, is sufficient to show possession. As to defendant Winters, we do not think the evidence sufficient to sustain the verdict."

Very similar in its facts and the rule followed is the case of People v. Archer, 190 N. W. (Mich.) 622.

There being a failure of proof, it becomes unnecessary to consider other questions, including the constitutional questions which brought the case here for review.

The judgment is reversed and the defendant discharged. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.