STATE OF MISSOURI, RESPONDENT, v. TOM WEST AND NOAH ROSS, APPELLANTS.—49 S. W. (2d) 274.

Kansas City Court of Appeals. May 2, 1932.

*F. M. Brady* for State.

*Amos D. Short* for appellants.

No briefs for either side.

ARNOLD, J.—This is an appeal from an order of the circuit court overruling a demurrer to the evidence on behalf of the defendants.

By information filed by the prosecuting attorney of Benton county, Tom West, Lester King and Noah Ross were charged jointly, on or about March 14, 1931, at said county, with having in their possession "hootch, moonshine, Corn whiskey, contrary to law and against the peace and dignity of the State." Defendants were arraigned and pleaded not guilty. They were tried to a jury and, by separate verdict, each was found guilty and a penalty of $200 was assessed against each one. Judgment was rendered accordingly and defendants were sentenced. A motion for a new trial on behalf of all the defendants was overruled and defendants West and Ross have appealed.

The only evidence in the trial was on behalf of the prosecution and at the close of this evidence a demurrer was interposed on behalf of all the defendants, which was overruled. Defendants announced "We stand on our demurrer," and introduced no evidence. Neither side has favored us with a brief and the position of the parties in respect to the appeal is gleaned from the transcript before us. Defendants objected to the introduction of any evidence, upon the

grounds that the information is not specific enough to charge an offense under the statutes of Missouri, that there are three men jointly charged, in a blanket information, with possession of one jug of liquor; no allegation is made of their ownership of the liquor, nor as to where it was found. The demurrer was overruled and the State, to sustain its case, introduced two witnesses, to-wit, John Wallen, sheriff, and his deputy, Ira Quigley, both of whom testified that on March 13, 1931, while they were driving on highway No. 65, about five and one-half to six miles north of Warsaw, they noticed a motor car without a license plate, parked on a narrow road on the west side of highway 65. They stopped their car each of the highway and north of the side road mentioned and walked back to the parked car. They searched the car and in doing so accidentally sounded the horn. At the sound a party hallooed over east of the highway, but the witnesses could not understand what was said because of the fencing; witnesses saw a couple of men standing there and heard a remark not understood by witnesses, and then saw the men running in a southwesterly direction. The sheriff ran down the road a little way, passed through the fence and called to the men to halt. Defendant West stopped and the sheriff asked him where the whiskey was—what they had done with it. West said they did not have any whiskey; sheriff asked who the other man was, but West did not tell. The other man continued running and disappeared in the timber. The sheriff testified he then went back to where his deputy was and where he had the other two defendants, King and Ross; that the deputy was the first to go over to where the defendants had started from; that the deputy had unearthed a jug of whiskey covered by some rotten wood at the point where defendants were first discovered, and from where they ran. Finding no more whiskey, they brought the defendants to Warsaw, the county seat.

Ira Quigley, the deputy sheriff in his testimony corroborated the sheriff as to the circumstances detailed by him. He testified that, on examination, they found nothing incriminating in the parked car; that he saw two of the defendants running from the place where he afterwards found the whiskey; that he followed them and found they lying down in a brush thicket. They were defendants Ross and King. Witness testified that the sheriff brought defendant West back to the place where he (the deputy), Ross and King were standing; that witness then went back to the place from which he had seen defendants run, and at that time, he uncovered the jug of whiskey "a little way from where the boys was." Witness was asked "Where was the whiskey?" and answered as follows:

"Well, there had been an old tree broken off, up about something like as high as my head, and the log had fell over, and it had rotted back there, and the whiskey was covered up in the rotten wood, at the log; right where the two men run from, that I seen.

"Q. Was there anything else on the ground there, or near there that you noticed?

. . . . . . . .

"A. Well, we found a place where somebody had sit—it was wallowed down, and been some whittling and cigarette smoking; one of those places I found quite a little bit of cutting off of a cork, or, I mean a bottle stopper."

Witness stated that was "about ten steps from where the whiskey covered up." The three defendants and the jug of whiskey were taken by the officers to Warsaw.

The evidence of record fails to show that defendants, or any of them, exercised any dominion over the jug of whiskey found hidden, as above detailed—a showing necessary to support a conviction. [State v. Nelson (Mo. App.), 21 S. W. (2d) 190.] The fact the jug of whiskey was found near the spot where defendants were seen, and that defendants ran from the place on the appearance of the officers may properly be considered suspicious circumstances, but such evidence is not sufficient to establish a case of possession and warrant submission to the jury. Possession of intoxicating liquor, within the meaning of the law, involves actual control and management of the liquor. There is no proof of such control and management of the jug of whiskey in evidence by one, or all of the defendants. Neither is there any evidence of ownership of the land whereon the offending liquor was found. It is within the realm of possibility that the owner of the land, or someone else, may have placed the whiskey there. Evidence that defendants were at or near the point where the whiskey was hidden, or were running therefrom, is not sufficient to reduce submission to the jury on the question of possession. [State v. Carter, 36 S. W. (2d) 917; State v. Blocker (Mo. App.), 274 S. W. 1097; State v. Huff, 317 Mo. 299, 296 S. W. 121; State v. Lunfrunk, 279 S. W. (Mo. App.) 733.] In order to convict defendants in this case, the jury would have to enter the realms of conjecture, surmise and suspicion, which they may not do. [State v. Carter, supra.] We therefore rule the learned trial judge was in error in overruling the demurrer to the evidence. The judgment is accordingly reversed, and appellants are discharged. All concur.