STATE of Missouri, Plaintiff-Respondent,

v.

Thomas E. BROWN, Defendant-Appellant.

No. 47693.

Supreme Court of Missouri,
Division No. 1.
March 14, 1960.

———◆———

Wear & Wear, Sam M. Wear, William A. Wear, Springfield, for defendant-appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

DALTON, Judge.

■■■ Defendant was charged and convicted of the offense of buying and receiving, with the intent to defraud, stolen property of the value of over $50, knowing that said property had been stolen, and he was sentenced to ten years' imprisonment in the State Penitentiary. See Section 560.270 RSMo [Laws 1955, p. 509]; Section 560.-161 RSMo [Laws 1957, p. 374], V.A.M.S. He has appealed and here contends that the court erred in overruling his motion for judgment of acquittal at the close of the State's case. Defendant offered no evidence in his own behalf.

The evidence most favorable to the State, which the jury could have believed in view of their verdict, tended to show that the business premises of the Four States Distributing Company, a corporation, located at 700 East Bower Street in the City of Springfield, Greene County, Missouri, was broken into and entered on the night of July 4, 1958, and a quantity of merchandise belonging to the Corporation of a retail value in excess of $2,200 and a wholesale or cost value in excess of $1,200 was stolen, taken and carried away. A list of the stolen merchandise was offered in evidence showing model and serial numbers of various items, including television sets, clock radios, Zenith Hi-Fi's, a Zenith trans-oceanic radio, Zenith table model radios, Zenith record players, Zenith transistor radios and other property. Access had been gained to the Corporation premises by forcing open an outer door. There were footprints about the outer door and they led to an alley where the police officers noticed a set of automobile tire tracks. Many pieces of the mentioned merchandise were later recovered and were exhibited and identified at the trial.

The State's evidence further tended to show that Ernest L. Murphy and Edward Adams broke into the Four States Distributing Company building about 10 p. m. on July 4, 1958, and removed the mentioned series of televisions, radios, transistors, TV's and Hi-Fi sets and took them to a basement at the home where Murphy resided. The next day the merchandise was moved to Adams' home. Three or four days later Adams gave Murphy $100 for his interest in the property. The payment was made at Adams' house. At that time Murphy saw a black Imperial Chrysler automobile parked at Adams' house. It had an out-state license on it. Murphy did not at any time talk to or have any dealings with defendant Brown. The mentioned burglary was only one of some thirteen that Murphy and Adams participated in. One of these was of the General Electric Warehouse in Springfield. Murphy and Adams took some of that merchandise to Indiana and disposed of it to Cyril A. Reisert and William Hagel.

On July 9, 1958, Reisert, who resided in Richmond, Indiana, came to Springfield with Hagel in Hagel's 1958 Chrysler Imperial automobile. They first went to Hagel's house in Springfield, Missouri, and then to defendant Brown's home in Springfield, where they saw and talked to Brown. Reisert had known Brown before when he had moved Hagel's furniture from Hagel's home in Springfield to Richmond, Indiana. When they saw Brown, they had a con-

versation with him regarding the merchandise about which Brown had phoned to Hagel in Richmond, Indiana, that is, about certain radios, TV's, transistor radios and such. Brown said the merchandise was not at his home but was at Adams' house, so Brown, Reisert and Hagel went to Adams' home in Hagel's car. There they saw radios, TV sets, Hi-Fi sets and things of that nature, which Adams had in his possession. It was all Zenith merchandise and it was in the kitchen and on tables and floors in Adams' home. It was merchandise of the same type, color and shape as the witness then saw in the courtroom. Reisert, at Hagel's request, noted down on a piece of paper the prices Adams gave on the merchandise. Hagel wanted to buy it and offered Adams $600 for it, but Adams wanted $1,000. Reisert and Hagel then took Brown back to Brown's home and let him out. Brown said he had an investment in the merchandise or a loan of some kind on it and told Hagel he would do anything he could to persuade Adams to take the offer that Hagel had made. There was also talk that Adams owed Brown money and Brown wanted to collect it. From Brown's home, Reisert and Hagel went to a filling station and left the car for servicing and then went to Hagel's home. Later, that evening Brown and Adams came over to Hagel's and the price of the merchandise was further discussed and a price was agreed upon. There was then some discussion between Brown, Adams and Hagel about the place for transfer of the merchandise. Hagel suggested the "Battlefield", and Springfield, and Hagel, Adams, Brown and Reisert went out there together in Brown's car, since Hagel's car had been left at Gamble's filling station for servicing. When they arrived at the "Battlefield", they saw a lady picking flowers and they decided the place was too conspicuous. After further discussion, it was decided to transfer the merchandise from Adams' house to Bill Hagel's garage. Brown was present when that decision was made and they all went back to Hagel's house.

Brown then let Hagel out and took Reisert to get Hagel's car and Reisert returned to Hagel's home. Later that same evening Brown and Adams came over to Hagel's in Brown's green Oldsmobile. They brought part of the merchandise on one trip and then went back for the rest. It was all put in Hagel's car, the 1958 Chrysler Imperial, except one piece, a Johnson outboard motor. Brown and Adams were together on both trips, bringing the property to Hagel's garage. Brown drove the car, a green Oldsmobile, and said it was his, although Adams drove it when the four went out to the "Battlefield". Adams, Brown, Hagel and Reisert were present when Sam Duke arrived at Hagel's home that evening while the merchandise was being loaded into Hagel's car. He heard them talking about TV sets, radios and Hi-Fi's.

When the transistor radios, portable record players, Hi-Fi's and TV sets were all loaded, Brown said to Hagel "the merchandise was hotter than hell, and to get out of town tonight, he said he didn't want Bill (Hagel) to stay in town that evening, for him to take a back road out of town." Before leaving, Hagel told Brown "he could use some more merchandise, he didn't want this heavy-a merchandise but he would take all small transistor radios that he could get." Brown replied "that he would get 'em, he would call him." Reisert and Hagel left that evening and took a back route out of town and went to St. Louis. Some of this merchandise was boxed and some was not, but the label on one box said "Four States Distributor" or "Four States Warehouse." Reisert and Hagel spent the night at the Statler Hotel in St. Louis and the next day went on to Richmond, Indiana, where the merchandise was sold to individuals. Reisert was later arrested and told the police about bringing the merchandise to Richmond and where it had been sold. Subsequently, other radios were brought from Springfield, Missouri to Richmond, Indiana by Murphy and Adams about two weeks later. It was all General Electric transistor radios.

There was other evidence that the merchandise purchased by Hagel was Zenith merchandise stolen from the "Four States" and that Reisert helped him transport it back to Indiana. While the price was agreed between Hagel and Adams, and Brown was present, Brown didn't purchase it. Adams wanted $1,000 for the property but sold for $600, five hundred was paid by check and $100 in cash. The money was paid to Adams. The haggling over the price was at Adams' house, but agreement and payment was at Hagel's house in Springfield.

Samuel Duke also testified that he was at Brown's home in the early part of July 1958, when Hagel and Reisert were there. On that occasion he heard Brown tell Hagel that he and Adams had some record players, TV's and Hi-Fi's and that Adams had them at his house. Later, on the same day, he saw Brown at Hagel's house in Springfield about 10:30 p. m. Hagel, Brown, Reisert and Adams were there, but they were in the garage. He saw Brown's green Oldsmobile and Hagel's '58 Chrysler there and he saw two or three TV sets or Hi-Fi sets or radio sets on the floor or benches in the garage. They were being loaded in Hagel's car. There was talk about the merchandise being "hot". Brown and Adams said it was.

Dan Mitrione, Chief of Police of Richmond, Indiana, testified that he assisted the Springfield, Missouri, police in recovering from various merchants, business people and ordinary citizens of Richmond, Indiana, some 26 articles of merchandise including certain musical equipment, Zenith Hi-Fi sets, radios, clock radios, TV sets, and transistor radios. A list of the articles recovered, including serial numbers, was prepared and it was identified and offered in evidence. These articles, except for pieces left in Indiana for evidence there, were later turned over to the Greene County sheriff and were identified in court. Many of these articles were identified as the articles taken from the Four States Distributing Company. They were identi-

fied by model and serial numbers. It was admitted that the recovered articles exceeded $50 in value.

Appellant contends that "the State did not prove by substantial evidence and beyond a reasonable doubt that defendant either bought or received any of the property in evidence." In argument appellant says:

"It is conceded that the evidence established that Ed. Adams and Ernest Murphy stole the property in question from the Four States Distributing Company, a corporation, * * *. The evidence further reveals that Bill Hagel and Cyril Reisert bought and received the same from Adams * * *. The only evidence in the case connecting the defendant with the transaction was that he told Hagel and Reisert where they could find the property, accompanied them to meet the thief, and helped the thief, Adams, transport the same to the home of Hagel, who bought and received the property along with Reisert."

Appellant further says "the only evidence involving the defendant in the transaction was that he helped bring the other parties together and helped the thief, Adams, transport the property to the home of the buyers and receivers, where the sale and transaction occurred and possession exchanged between the seller and the buyers"; and that, "conceding that he helped the thief transport the property in his automobile, the thief was always present, retained possession of the same (the property), and negotiated the entire sale with the buyers." On the basis of these facts appellant contends that "there is a complete failure of proof that the defendant ever had possession of the property", or that "defendant either bought or received the stolen property." Appellant cites State v. Hicklin, 358 Mo. 1016, 218 S.W.2d 564, 565. Appellant's brief does not admit that the defendant knew the property was in fact stolen, but there was substantial evi-

dence on that issue, as hereinbefore set out.

In the case of State v. Park, 322 Mo. 69, 16 S.W.2d 30, 35, the court said: "The identity of the owner of the stolen goods is not within the reasonable intendment of the statute as an essential element of the crime of receiving stolen goods. Such essential elements are a previous larceny of the goods, reception thereof by the accused, and knowledge on his part of their stolen character at the time he received them. The element of value is also important, but only in classifying the offense as a felony or as a misdemeanor." The issue of "intent to defraud" has now been added by the 1955 amendment [Laws 1955, p. 509], but such intent may be inferred from the facts shown. And see State v. Harris, Mo.Sup., 313 S.W.2d 664, 670(6).

Section 556.170 RSMo 1949, V.A.M.S., provides: "Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree."

It was unnecessary to charge defendant with being present, aiding, abetting and assisting Hagel and Reisert in the commission of the crime. " 'A party may be charged with doing the act himself, and be held liable under such charge, for being present, aiding, and assisting another in doing it.' " State v. Sykes, 191 Mo. 62, 89 S.W. 851, 855(9); State v. Butler, Mo. Sup., 310 S.W.2d 952, 957(7–9). The evidence was sufficient to show that defendant, with knowledge that the property was stolen, was at all times present, aiding, abetting, assisting, soliciting and encouraging the commission of the offense of receiving stolen property by Hagel and Reisert. In the case of State v. Cantrell, 320 Mo. 248, 6 S.W.2d 839, 840, the defendant did not steal the chickens, but he aided and abetted the thief in carrying the stolen chickens to the car and removing them from the owner's premises. In State v. Butler, supra, there was no evidence that defendant personally cut the jail bars in the jail door, but he was convicted of breaking jail and escaping. In the case of State v. Burlison, 315 Mo. 232, 285 S.W. 712, 715(2) the proof did not show that defendant himself actually committed the rape, but he was present aiding and assisting another. And see State v. Sheard, Mo.Sup., 276 S.W.2d 196, 199. In State v. Herman, Mo.Sup., 280 S.W.2d 44, 46(5) defendant did not personally commit the robbery, he only waited in an automobile and assisted his companions in their escape. In State v. Braden, Mo.Sup., 295 S.W. 784, the defendant did not steal the automobile tires, but hauled them from one place to another. Appellant was, therefore, equally guilty of the offense committed by Hagel and Reisert and defendant's motion for a judgment of acquittal was properly overruled.

■ Appellant assigns error on the refusal of defendant's Instruction No. 5, which would have told the jury that "if you find and believe that the defendant, Thomas E. Brown, received nothing of value for any part that he may have taken in the transaction in evidence, and you further find that he merely acted in said transaction for the purpose of accommodating the parties thereto and did not buy or receive any of the stolen property in evidence, then you will find the defendant not guilty."

Appellant contends that, if he was merely accommodating the parties and received nothing of value for any part he may have taken in the transaction and did not personally buy or receive any of the stolen property, he could not have been guilty of the crime charged. There is no merit in this assignment, as appears from our determination of the previous assignment. The Instruction was properly refused.

■ Appellant next assigns error on the giving of Instruction No. 1 on the

ground that it "hypothesizes the fact of buying stolen property" when the record contains no evidence of defendant *buying* the property. Defendant's motion for a new trial does not contend the Instruction is erroneous on that ground. The assignment must therefore be overruled. Supreme Court Rule 27.20, 42 V.A.M.S. Appellant further says the Instruction is erroneous because "at the beginning of said Instruction the court instructed that if the jury found the defendant 'did feloniously buy or receive'; (but) thereafter in said Instruction, the court merely had the jury find that the defendant 'received' the property." The only argument in support of this assignment is that, "The evidence clearly showed that Bill Hagel and witness Reisert bought and received the property from the thief Adams; that under these circumstances it was erroneous to instruct the jury that they could find the Defendant guilty if they found that he bought said property." The assignment must be overruled since defendant could "be charged, tried, convicted and punished," as a principal in the first degree, if he was present at the place of the crime, aiding, abetting, assisting, advising and encouraging the commission of the felony, as the evidence sufficiently shows.

▪ Appellant further says that "the court, at the request of the prosecuting attorney, and over the objection of defendant, changed the word 'and' to the word 'or' in ink, while the rest of the Instruction was type-written, which over-emphasized the word to the jury." While this assignment appears in the motion for a new trial, the allegation does not prove itself and the assignment is not otherwise supported by the record presented and must be overruled.

▪ Appellant's final assignment is that the court erred in giving Instruction No. 2 because it is "a mere declaration of an abstract principle of law and did not hypothesize any of the facts in evidence." The Instruction is as follows: "You are further instructed that when two persons knowingly act together in the perpetration of an unlawful act, then what each one does in the perpetration of said act is the act of all who participate therein."

The motion for a new trial charged error on the ground that the "instruction is a mere declaration of law and gave the jury a roaming commission to find the defendant guilty if they found that he, together with another, acted together in the perpetration of *any unlawful act,* while the only evidence connecting Defendant with any act was that the Defendant, along with Ed Adams, transported the stolen property in Defendant's automobile to the home of Bill Hagel, and the jury was given the right under said instruction to find Defendant guilty if they believed that such a transportation of said property was unlawful."

Appellant concedes that the Instruction is a correct declaration of an abstract principle of law, but, as stated, complains that no attempt was made to hypothesize any of the facts in evidence applying the declaration of law. Appellant does not claim the principle of law stated in the Instruction was inapplicable to the facts in evidence, nor does it appear how he could have been prejudiced by the giving of this Instruction, which did not direct a verdict. Appellant argues that it gave the jury a roving commission to find him guilty if they found he acted together with others in any unlawful act. There is no reason to think that the jury would believe the defendant could be found guilty, unless they found that he actually did participate in the commission of the crime charged against him.

It is ordinarily not proper to state an abstract proposition of law in an instruction, even if it is a correct declaration of law. In attempting to apply such an instruction to the evidence in the case, without direction from the court as to how the same should be applied, there is danger that the jury may be misled. Such instructions are condemned because no one can know exactly how the jury will apply them to the

case at hand. Schipper v. Brashear Truck Co., Mo.Sup., 132 S.W.2d 993, 995(3–4), 125 A.L.R. 674. Much depends upon the particular type of the abstract instruction and upon the particular facts of the case. See State v. Byrnes, 238 Mo.App. 220, 177 S.W.2d 909, 911, where the giving of such an instruction was held to be error. We have a very different situation here, both as to the facts and the form of the instruction.

"An instruction must be considered in its entirety and if the entire instruction when judicially examined correctly presents the law, an assignment as to an isolated paragraph, which considered alone might be misleading, must fail." State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, 430(8–10). A similar rule applies in determining whether a single instruction is misleading and prejudicial. All of the given instructions must be read and considered together and, if they properly present the law of the case when thus considered, that is all that is necessary. State v. DeShon, 334 Mo. 862, 68 S.W.2d 805, 810(8, 9); State v. Duncan, Mo.Sup., 316 S.W.2d 613, 618(7–10). While the instructions here were separately numbered, they were but parts of a single charge to the jury and they must be read and considered as a whole and when so considered, Instruction 2 was not misleading in view of the charge and the facts in evidence. State v. Gentry, 329 Mo. 282, 44 S.W.2d 27, 29(2). The mere fact that the Instruction was an abstract statement of the law does not make the giving of it reversible error. State v. Mayberry, Mo.Sup., 272 S.W.2d 236, 243(20). And see State v. Smith, 313 Mo. 71, 281 S.W. 35, 39.

Appellant further cites State v. Cooper, Mo.App., 32 S.W.2d 1098, where there was no evidence that a bottle of moonshine whiskey was in the possession of both persons in an automobile and there was no evidence that defendant had possession of the liquor, except that he was riding in the car from which it was thrown. The court held the evidence of possession was insuffi-

cient. On the basis of that case, appellant argues "there was no evidence that the defendant at anytime had actual control, care and management of the property" in question here; and that "the only possible evidence of possession of the property by defendant was that he aided the thief Adams in transporting the property to the home of the buyer and receiver thereof." These contentions do not aid appellant, as they merely tend to support the conclusion that defendant was aiding and abetting the commission of a felony by another and was equally guilty. Nor do these contentions tend to show defendant was prejudiced by the giving of Instruction No. 2. The assignment is overruled.

We have further reviewed the record and find no errors in regard to those matters not required to be preserved in the motion for new trial or in the brief.

The judgment is affirmed.

All concur.