**STATE of Missouri, Respondent,**

v.

**James A. CIARELLI, Appellant.**

No. 23665.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

Rehearing Denied April 1, 1963.

Louis Wagner, Kansas City, for appellant.

William A. Collet, Pros. Atty., Don Hutson, Asst. Pros. Atty., Kansas City, for respondent.

HUNTER, Judge.

Appellant, James A. Ciarelli, was convicted by a jury of the misdemeanor charge of receiving stolen goods in the amount of less than fifty dollars. He was fined $500.00 and sentenced to six months in the Jackson County jail. He has appealed, his sole contention of error being that there was no evidence upon which his conviction could be sustained.

The Courts of Appeals are courts of general appellate jurisdiction. The Supreme Court's jurisdiction is limited to the instances specified in the Constitution. Mo.Const., Art. V, §§ 3, 13, V.A.M.S. Jurisdiction of the appeal from the misdemeanor conviction not involving any of the constitutional grants of appellate jurisdiction to the Supreme Court, is in this court. State v. Harold, 364 Mo. 1052, 271 S.W.2d 527; State v. Bradley, Mo.App., 247 S.W.2d 351.

According to the evidence, on August 5, 1960, between the hours of 12:00 a. m. and 7:30 a. m., the Lincoln Junior High School, 2102 East 23rd Street, Kansas City, Missouri, was broken into and six fans were stolen. These particular fans were easily identifiable, by size, color, and manufacturer's number. Two of them were marked by stickers stating respectively "nurse's room" and "vice-principal's office". The fans were the property of the School District of Kansas City, Missouri, having been purchased on June 16, 1957, at a cost of $34.04 per fan. Other testimony placed their present value at approximately $5.00 per fan.

On that same day, August 5, 1960, about 4:30 p. m. at about 22nd Street and Paseo in Kansas City, James Worthington, a motorcycle officer of the Kansas City Police Department working at a speed check, observed three men coming out of the weeds near his location. We turn to his testimony concerning what then occurred: "The point where I sat is on a hill like and I glanced up there and I saw three men in the weeds up there. It is a wooded area at this location. * * * Well, they were coming out of the weeds at the time, * * * and the Park Department had cut the grass in there, so you could see everything that was going on. They had just come out of the weed patch. * * * When I glanced at them, one of them throwed something in the weeds. * * * One of them went back in the weeds (and was not seen again) and two of them continued on toward the car. * * * By the time I got my wheel

turned around and stopped they had got in the car and were sitting there. * * * At that time they got out of the car and approached me, and I asked them what they were doing in the weeds and they said, 'Nothing'. * * * I said, 'Well, you must be doing something.' And I said, 'What were you doing?' * * * I said, 'You must have been doing something in there.' They said, 'No; we weren't doing nothing.' And I said, 'Were you dumping cans?' * * * They said 'No'. And, I said, 'What were you doing?' They said, 'Nothing'. I said, 'Well you might as well tell me because I am going to look.' * * * At that time I got off my wheel and started towards the weeds where I had last seen them at, and at this location I found four electric fans. * * * I asked them if they knew anything about them, and they said, 'No'."

Officer Worthington then placed these two men, later identified as Frank Amaro and appellant James A. Ciarelli, under arrest. "I asked them whose car it was and Frank (Amaro) said it was his, and I said, 'May I see your car keys?' He gave me his car keys and I opened the trunk up and there was two more fans in the trunk. * * * Q. Did you then ask this defendant and Amaro what they knew about the fans? A. Yes. He said he didn't know nothing about them, and we kept talking and then he stated that he had met a colored man, a colored boy, who told him where the fans was at and he was supposed to meet him there at 4:30, * * *. Q. What you are telling us is that after you found the fans in the trunk of the car, then this defendant told you a different story, is that right? A. Yes. Sir."

The two men were taken to Police Headquarters and questioned by Officer Schump who testified, "I asked him (Ciarelli) how he happened to find out about the fans or why he was at that location. He (Ciarelli) stated on the afternoon, the early afternoon of August the fifth he was stopped on the street between 11th and 12th on Cherry by two colored boys, who stated that they had

some fans hidden in the weeds at 22nd and Paseo and they wanted to sell them. * * * Well, Mr. Ciarelli stated to me that he told these boys he was not interested in buying these fans, but that later on that afternoon he met a friend of his and they were talking about this, and they decided to go out and take a look at them, which they did. He said they went to 22nd and Paseo where they found six fans hidden in the weeds, and that he had loaded two of the fans in the trunk of this friend's car. * * * Q. Whom did Ciarelli say had loaded the fans in this car? A. He said that he had. He had loaded these fans in the trunk of his car when they were arrested. * * * Mr. Ciarelli stated that he and this other fellow had talked about it and they decided to go get the fans. They were going to take them somewhere else and hide them and then call the police."

Frank Amaro, who earlier had pleaded guilty to a similar charge, testified on behalf of Ciarelli. Amaro stated he was an employee of Bruno Bonding Company; that he, not Ciarelli, was the one approached by a colored boy about the fans; that he "called burglary but no one was there"; that he had invited Ciarelli to go along for the ride without telling Ciarelli anything about the fans; that he, not Ciarelli, went into the weeds, located the fans and put them in the car, and that Ciarelli never got out of the car but sat in it reading a newspaper; that he intended to bring the fans to the Police Department but was arrested before he could do so.

On rebuttal, Officer Schump testified he had questioned Ciarelli and Amaro together; that Amaro had stated he had been contacted by Ciarelli about "some fans hidden out there in the weeds"; that they went there to get these fans; that Ciarelli loaded two of them into his (Amaro's) car just before they were arrested; and that Amaro never mentioned he was approached by a colored boy.

Section 560.270, RSMo 1959, V.A.M.S., provides: "Every person who shall buy, or in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall, upon conviction, be punished in the same manner and to the same extent as for the stealing of the property so bought or received."

We proceed to examine the evidence to see if it fails to make a submissible case under the terms of the statute, as defendant contends.

First, is there evidence that the property has been stolen by a person other than the one charged with receiving it? Two witnesses for the State, George Whisonant, assistant custodian, and H. I. Harwell, Principal of Lincoln Junior High testified in detail to the effect that these particular six fans in question belonging to the Kansas City School District were stolen from the school on August 6, 1960. This evidence provides an affirmative answer to the question propounded, and appellant does not seriously contend otherwise.

Second, is there evidence that the person charged received the stolen property? Appellant vigorously asserts there was no proof of possession, physical or otherwise, by him, saying the two fans were found locked in the trunk of another person's car, citing State v. Watson, Mo.Sup., 350 S.W.2d 763; State v. West, 226 Mo.App. 1149, 49 S.W.2d 274; State v. Nelson, Mo.App., 21 S.W.2d 190, and State v. Huff, 317 Mo. 299, 296 S.W. 121. Appellant has overlooked the testimony of Officer Schump who stated that Ciarelli told him that he, Ciarelli, had gone to the place the fans were hidden to get them; that he, Ciarelli, had loaded two of them into the car trunk, and that they, Amaro and Ciarelli, were going to take them to another place and hide them. Appellant also has overlooked the rebuttal testimony of Officer Schump to the effect that Amaro told him in Ciarelli's presence that it was Ciarelli who contacted him about the fans and that it was Ciarelli who loaded two of them in the car trunk. This testimony is sufficient to support a jury finding

that appellant had taken possession of the stolen property—or, stated differently, that appellant did "receive" the stolen property within the meaning of the statute. Also, Officer Worthington's testimony previously quoted must be considered as additional evidence bearing affirmatively on the issue of whether appellant did "in any way receive" the stolen property.

Third, is there evidence that the receiver knew or believed the property was stolen at the time he received it? This also must be answered in the affirmative.

█ As stated in State v. Hicklin, 358 Mo. 1016, 218 S.W.2d 564, 565, "It is often difficult to make direct and positive proof of the accused's knowledge the goods were stolen, and this element may be inferred from certain facts and circumstances."

In this case the facts and circumstances from which the jury could infer that appellant knew the fans were stolen property include: (1) The testimony that appellant learned about the six fans under very suspicious circumstances—i. e., he learned about them on the street from an unknown, unnamed colored boy who had them hidden in some weeds; (2) appellant and two others were observed in the weed patch where the fans were hidden, and one of the three fled, and was never identified; (3) appellant's statement at the time, including the highly conflicting stories he told; (4) appellant's statement he was going to move the fans to another place and hide them; (5) Amaro's statement he was going to call the police about them indicating he knew they were stolen coupled with his statements he and appellant had discussed getting the fans from where they were hidden in the weeds.

█ It is the rule that a jury is permitted to draw from the evidence such reasonable inferences as the evidence will support. Morris v. E. I. Du Pont De Nemours & Co., 341 Mo. 821, 109 S.W.2d 1222(7). With that rule in mind it is clear that there was sufficient evidence from the conduct and behavior of appellant, the character of·the persons who approached him to make a sale, the circumstances under which he was approached; his reaction to the approach; the kind and quantity of property offered; the place where such property was kept; what he intended to do with the property; how he acted when confronted by the officer and requested to explain his possession of it; and other suspicious circumstances unusual for honest transactions to sustain a finding by the jury that appellant knew or believed the fans were stolen property at the time he took possession of them. See, State v. Levan, 306 Mo. 507, 267 S.W. 935; State v. Kosky, 191 Mo. 1, 16, 90 S.W. 454, 459; State v. Woodall, Mo., 300 S.W. 712.

Fourth, is there evidence that the person who received the stolen property did so with the intent to deprive the owner of his interest therein—or as the statute expresses it, "with intent to defraud"? Again, our answer is in the affirmative. In State of Missouri v. Harris, Mo.Sup., 313 S.W.2d 664, 670, our Supreme Court in defining the phrase "with intent to defraud" said, "An intent to defraud indicates a purpose or design to deprive someone of a lawful right, interest, or property by fraudulent means and is inconsistent with an intent to return the property to its owner."

Added to the circumstances set out above concerning appellant's guilty knowledge that the fans were stolen property is his statement when approached by Officer Worthington that he was doing "nothing" in the woods; his concealment of knowledge of the fans until confronted with them; and his inconsistent explanations of his possession of them, and what he intended to do with them. These acts and statements are inconsistent with an intent to return the property to its owner or to the police and bear the reasonable inference that at the time appellant received the property he had no intent to return it to its owner or to the authorities but rather obtained it with intent to deprive someone of his lawful ownership. The effect of this

evidence is such as to convince that there is no merit in appellant's contention that there is no substantial evidence to support a jury finding that appellant received the stolen property with intent to defraud.

█ We have read and considered all of appellant's citations, as well as his various contentions concerning the lack of adequate evidence to make a submissible jury case. For the reasons aforesaid it is our opinion that there is sufficient and substantial evidence to support the submission of the case to the jury and to support the jury's verdict.

The judgment is affirmed.

All concur.

### On Motion for Rehearing

PER CURIAM.

Appellant contends in our opinion we have permitted extrajudicial statements, admitted over objection, to be considered in proving the corpus delicti without necessary independent proof thereof.

█ As stated in the recent case of State v. Harris, Mo.Sup., 313 S.W.2d 664, 670, "Under the present statute the offense of receiving stolen property connotes receiving such property, knowing it to have been stolen, and with a purpose or design to deprive someone of a lawful interest or property right therein." Essentially these are the elements comprising the corpus delicti of the crime.

██ It is the established law that when the corpus delicti has not been sufficiently proven, an uncorroborated extrajudicial confession or statement in the nature of an admission of guilt cannot be regarded as evidence tending to show guilt. Yet this rule does not require full proof of the body of the offense, independent of the confession or statement. As stated by our Supreme Court in State v. Deyo, 358 S.W.2d

816, 819, "If there is evidence of corroborating circumstances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circumstances and the confession may be considered in determining whether or not the corpus delicti has been established. (Citations omitted.) We have said only slight corroborating facts have been held sufficient (see State v. Truster, Mo.Sup., 334 S.W.2d 104, citing cases), and, notwithstanding the general practice, it is not essential that the independent proof of the corpus delicti come first in the order of proof."

█ Defendant does not question that there is ample proof that the fans were stolen property. It is usually difficult if not impossible to adduce direct and positive proof of guilty knowledge, and this element of the offense may be inferred from facts and circumstances in evidence. State v. Ham, Mo.Sup., 104 S.W.2d 232, 233; State v. Eggleston, Mo.App., 27 S.W.2d 726, 728. The evidence, without considering the extrajudicial statements of defendant, tended to prove that Ciarelli either personally or acting in concert with the others present with him received the fans and knew they were stolen when he received them, (State v. Brown, Mo.Sup., 332 S.W. 2d 904, 909) and also tended to prove defendant had a purpose or design to deprive the owner of the fans of its property right therein. As stated in State v. Brown, supra, " * * * the issue of 'intent to defraud' has now been added by the 1955 amendment * * * but such intent may be inferred from the facts shown."

█ There would be no useful purpose served in restating the independent evidence of corroborating circumstances tending to prove the constitutive elements of the crime. The corpus delicti was sufficiently proved to permit the evidence of the questioned extrajudicial statements. The motion for rehearing is overruled.